PAUL A. BONIN, Judge.
11 Lucy Brooks owned a one-half undivided interest in a home on East Hermes Street in New Orleans.[1] The home was collateral for a loan from Wilshire Credit Corporation. She had fallen behind in her monthly payments to Wilshire, and the mortgage company instituted foreclosure proceedings on her home.[2] She then filed a petition for relief under Chapter 13 of the United States Bankruptcy Code.[3] The Chapter 13 filing effected an automatic stay of the foreclosure proceedings and Ms. Brooks was allowed to remain in her home without threat of foreclosure so long as she complied with the plan for repayment of her creditors and other conditions.
Almost immediately an issue arose with Wilshire Credit about whether she was complying with her Chapter 13 plan by maintaining flood and hazard insurance on her home. She secured hazard insurance on her home through the Powell Insurance Agency with the Louisiana Citizens Property Insurance Corporation. The declarations sheet of the policy binder showed that the period of coverage was from April 13, 2004 to April 13, 2005. Ms. Brooks *901 was paying the |2premium for the policy in installments, payable at her insurance agent’s office. During this coverage period the creditor, it seems, occasionally forced place hazard and flood insurance on the property from time to time due to dissatisfaction on its part that Ms. Brooks was continuously maintaining the required insurance coverages.
In any event, Ms. Brooks obtained a renewal policy from Louisiana Citizens Property Insurance Company with the coverage period, according to the declarations sheet, from April 17, 2005 to April 17, 2006. About that same time there was a hearing on the bankruptcy trustee’s motion to dismiss her case for non-compliance with the plan. On April 26, 2005 the bankruptcy court signed an order in which her case was dismissed and the stay which had issued pursuant to 11 U.S.C. 362 was vacated.
On June 6, 2005 a notice of cancellation for non-payment premium of the Louisiana Citizens’ policy number FZD 0333548 01 was sent to Ms. Brooks at her home address as shown on the policy. It showed that the amount due was $83.32 and that the policy would be cancelled effective June 30, 2005. By June 27, 2005 Ms. Brooks apparently made the payment to her agent and who in turn remitted it to the insurance company.[4] The company issued a notice of reinstatement effective June 30, 2005. The policy was not can-celled.
Not very much later on July 22, 2005 a similar notice of cancellation for non-payment of premium was sent to Ms. Brooks’ home address. This time the|namount due was $204.16 for the installment that was then due. This time the policy was to be cancelled effective August 15, 2005.
On August 29, 2005 New Orleans met Hurricane Katrina and her winds. The levees failed. Ms. Brooks’ home was destroyed.

The Proceedings in the District Court

Ms. Brooks, without the benefit of counsel, filed suit in the Civil District Court. The district court allowed her to proceed without the prepayment of costs on account of her “poverty or lack of means”. La. C.C.P. arts. 5181 et seq. The defendants were Louisiana Citizens[5] and State National Insurance Company. She alleged that the companies insured her home for the losses she sustained from the storm. The district court issued its case management order which it had established to expedite the processing of the multitude of storm claims.
Louisiana Citizens filed a standard pleading in the Katrina cases, excepting to the lawsuit on the grounds of a pending class action suit and admitting the issuance of the policy to Ms. Brooks subject to its terms and conditions. Its answer set forth that it had tendered payment to her for any losses of covered perils. Its answer also specially pleaded, apparently contradictorily, that the policy was “properly can-celled prior to August 28, 2005, and there was no coverage for the loss alleged herein.”
State National answered, explaining that it was the forced placed insurer of Wilshire Credit, the mortgagor. It further explained that its policy included flood 1 coverage, although under another policy number, and that the total afforded cover *902 age for Ms. Brooks’ property was $80,000. Its answer challenged Ms. Brooks’ right to recover under State National’s policy as it was only insuring her creditor’s interest. State National also declared that it had adjusted the loss and paid Wilshire Credit the full amount of the policy proceeds of $80,000.®
Louisiana Citizens filed a motion for summary judgment on the grounds that the policy had been properly cancelled before the loss event. Counsel for Ms. Brooks enrolled. State National filed its motion for summary judgment on the grounds that Ms. Brooks was not an insured, having no right of action against it, and that it had fully paid its liability to Wilshire Credit. Ms. Brooks filed her motion for summary judgment on the grounds that Louisiana Citizens had admitted in its answer that it provided coverage and that the materials submitted by State National in its motion established the extent of the losses.
Louisiana Citizens obtained leave of court to amend its answer and clarify its position.
The district court granted State National’s motion and dismissed Ms. Brooks’ claim against it with prejudice at her costs. No appeal from this judgment of September 12, 2007 was taken and it is now final.
The district court by judgment dated June 9, 2008 denied Ms. Brooks’ motion for summary judgment, but granted Louisiana Citizens’ motion for |[6]isummary judgment and dismissed her suit with prejudice. She timely filed for a devolutive appeal to this court from the June 9, 2008 judgment.

Review on Appeal

Ms. Brooks on appeal is without counsel.[7]
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate: whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. King v. Parish Nat’l Bank, 04-0337, p. 7 (La.10/19/04), 885 So.2d 540, 545. A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). Favored in Louisiana, the summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of eveiy action, and should be construed to accomplish those ends. La. C.C.P. art. 966(A)(2).

Application of the Law to the Uncontested Fact

We have reviewed the materials introduced by Louisiana Citizens in support of its motion for summary judgment. These include the policy itself, with Ms. Brooks’ billing address which was her home, the notice of cancellation sent to that | (¡address, with a copy to her insur- *903 anee agent, the certificate of mailing to her, and the certification by affidavit of Connie Stelly that the mail was not returned to the service provider for Louisiana Citizens.
The insurance policy, which is the agreement between the parties, authorizes in Paragraph 17(b)(1) of the “Conditions” of the policy that the company may cancel the policy for non-payment of the premium by giving the policyholder by mail 10 days notice before the effective date of cancellation. Proof of mail shall constitute sufficient notice. The notice to Ms. Brooks was mailed on July 22, 2005 and the effective date of August 15, 2005 was, of course, more than 10 days.
The provision of the policy is consistent with the controlling provisions of law. La. R.S. 22:636(A)(4) provides in pertinent part:
(4) Any policy may be cancelled by the company at any time during the policy period for failure to pay any premium when due whether such premium is payable directly to the company or its agent or indirectly under a premium finance plan or extension of credit, by mailing or delivering to the insured written notice stating when, not less than ten days thereafter, such cancellation will be effective....
In Ms. Brooks’ opposition filed by her counsel, she confirms that her insurance agent sent her on July 27, 2005 a courtesy reminder that her payment of $204.16 must reach Louisiana Citizens by August 15, 2005.
Moreover, in her opposition memorandum she asserts that upon receiving this notification she “remitted said amount to defendant on July 28, 2005”, apparently without ever stating by payment through her agent.[8] She attached to her 17memorandum an “affidavit” which declared that she is the plaintiff in this suit, that she read “the entirety” of the opposition memorandum, and “all of the allegations of fact contained therein are true and correct.”
She also attached a photocopy of an unverified document which appears to have been generated first by Louisiana Citizens with a preprinted notation “Agent’s Copy”, which appears to be a copy of the notice of cancellation mailed to Ms. Brooks dated July 22, 2005. On this document are handwritten notations and stamped notations, none of which exist on Louisiana Citizens’ verified copy of the notice of cancellation introduced with its motion. One of the stamps added to the document, situated on the payment coupon portion, shows “RECEIVED JUL 28 2005 POWELL INSURANCE, INC.” We are to infer, we understand, from this stamp that it is the receipt by Powell Insurance Agency of the amount owed by her to Louisiana Citizens.
Louisiana Citizens argues that its evidence established that it had not received payment of the delinquent premium before *904 August 15, 2005 and further argues that Ms. Brooks introduced no countervailing evidence that she did timely pay the overdue premium, entitling her to a continuation of coverage under the policy. We agree.
We have previously held in Kaufman v. Cleaton, 2003-0452, p. 3 (La.App. 4 Cir. 10/8/03), 861 So.2d 586, 588 that
The “Verifying Affidavit” filed by the defendant making the generalized assertion that “all of the allegations contained in her Answer and in her ‘Memorandum in Opposition to Beatrice Kaufman’s Motion for Summary Judgment’ are true and correct to the |sbest of her information, knowledge, and belief,” is not sufficient to meet the La. C.C.P. art. 967 requirements that summary judgment affidavits “set forth specific facts.”
Accordingly, we disregard the “affidavit” filed by Ms. Brooks. Her reference to and verification of the “allegations of fact” contained in it do not “set forth specific facts.”
Next we evaluate the unverified document which was submitted by Ms. Brooks in connection with her opposition. We must, at best, infer from the document that it somehow constitutes a business record of Powell Insurance and, more importantly, that it is proof that Ms. Brooks made her premium payment to her insurance agent. La. C.C.P. art. 967(A) also requires that an opposing affidavit “shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.” No affidavit was submitted or introduced by Ms. Brooks attesting to the authenticity of this document. “In summary judgment proceedings, a document that is ‘not certified or attached to an affidavit is not of sufficient evidentiary quality to be given weight in determining whether or not there remain genuine issues of material fact.’ ” Stuart v. New City Diner, 1999-2270, p. 9 (La. App. 4 Cir. 3/15/00), 758 So.2d 345, 350. We have reinforced this in our holdings in Granier v. Avondale Industries, Inc., 2005-1085, p. 5, (La.App. 4 Cir. 8/16/06), 940 So.2d 678, 681 where we reiterated the holding in Williams v. Memorial Medical Center, 2003-1806, pp. 14-15, (La.App. 4 Cir. 3/17/04), 870 So.2d 1044, 1053:
In meeting the burden of proof, unverified documents, such as letters or reports, annexed to motions for summary judgment are not self-proving and therefore will not be considered; “merely stapling them to a motion for summary judgment” does not “magically” transform such documents into competent summary judgment evidence. Schully v. Hughes, 2000-2605, p. 5 (La.App. 4 Cir. 6/5/02), 820 So.2d 1219, 1222.
| ¡/These cases are jurisprudential expressions of the requirements set out in La. C.E. arts. 803(6), 901(A), and 902 when applied to summary judgments.
Since Ms. Brooks did not introduce her own affidavit on her own personal knowledge specifically declaring that she had paid the overdue premium to Louisiana Citizens and since she introduced no affidavit of a qualified person to which the document would have been attached, Delcambre v. Price, 1999-0223, p. 4 (La.App. 4 Cir. 3/24/99), 738 So.2d 593, 595 (“... where business records are concerned, the courts have deemed it sufficient that the affiant be qualified to identify the business records as such”), we are compelled to conclude that there is no genuine issue of material fact precluding the granting of summary judgment in favor of Louisiana Citizens.
*905 Ms. Brooks has also appealed the denial of her motion for summary judgment. Her contentions, in addition to those addressed concerning Louisiana Citizens’ motion, are that Louisiana Citizens “admitted” coverage in its original answer and invited her to mediate her claim prior to the filing of summary judgment motions. As we stated earlier, Louisiana Citizens was permitted by the court without objection from Ms. Brooks’ counsel to amend its answer. La. C.C.P. art. 1151. The amendment in effect deleted the boilerplate averment of “tender” and simply substituted a denial of Ms. Brooks’ allegation in paragraph 7 of her petition. Ms. Brooks’ motion simply did not take this amendment into consideration. The resulting pleadings by Louisiana Citizens cannot be characterized as a “judicial confession” on its part. With regard to Louisiana Citizens’ counsel invitation to Ms. Brooks to mediate her claim, an offer to [ 10compromise a disputed claim is no evidence of the validity of the claim. La. C.E. art. 408(A).
Therefore, we also conclude that the denial of Ms. Brooks’ motion for summary judgment was correct as she was not entitled to the relief she sought.

Decree

The judgment rendered on June 9, 2008 in these proceedings is affirmed.
AFFIRMED.

. Her mother, Ms. Lizzie Mathis, is also a co-owner of the remaining interest.

. LaSalle National Bank v. Lucy Jones Brooks, Civil District Court for the Parish of Orleans, #2004-05195 “G".

.In re Lucy J. Preston {nee Brooks), United States Bankruptcy Court for the Eastern District of Louisiana, # 2004-12702.

. There is a copy of the agent's check made payable to the company in the amount of $83.32.

. She initially named this defendant as Louisiana Citizens Fair Plan, a not uncommon practice and error due to materials issued by Louisiana Citizens Property Insurance Company, its correct legal name.

. We are unable to determine from the record before us whether this payment extinguished her debt to Wilshire Credit. In her Chapter 13 filing in 2004 she reported the claim as being in the amount of $74,723.

. The record does not show a motion to withdraw filed by her counsel in the district court. However, her motion for appeal was signed by her in proper person, she filed her original appellant’s brief and her reply brief in proper person, and she appeared and ably and courteously orally argued her case in this court. We also note that counsel opposing her was at all times professional and considerate toward her.

. The opposition memorandum reports that a summary judgment had been denied in her case against the agent pending in the 24th Judicial District Court for the Parish of Jefferson, entitled "Lucy Brooks v. Powell Insurance Agency,” # 635-350 "B”. Attached as exhibit, albeit unverified, is the defendant’s motion and memorandum in support of the motion for summary judgment and a photocopy of the judgment. We have reviewed these attachments and note that the argu-merits set out by the insurance agent do not apply to the notice of cancellation dated July 22, 2005, which we have under consideration, but to an earlier notice dated June 6, 2005, which we are not considering. Parenthetically we observe that payment must have been made for the June 6, 2005 otherwise the cancellation would have been effected on June 30, 2005 and that the dispute about the July 22, 2005 notice would never have arisen.