11 Jesus Rapalo-Alfaro purchased a policy of liability insurance from Certain Underwriters at Lloyds.[1] Claiming he was *1176 injured by an underinsured driver, he amended his lawsuit against the driver and his insurer and named Lloyds as his uninsured motorist carrier. His insurer filed a motion for summary judgment, which motion was supported by a certified copy of the UM waiver electronically signed by Mr. Rapalo-Alfaro. He opposed the motion, arguing that the waiver was invalid for.various reasons, but notably failed to submit any affidavit or other evidence. The motion was granted, and Mr. Rapalo-Alfaro’s suit against Lloyds was dismissed with prejudice. He then appealed to us.
On our de novo review, we find that the trial judge correctly decided that Mr. Ra-palo-Alfaro failed to raise any genuine issue of fact and that the UM waiver 12electronically signed by Mr. Rapalo-Alfa-ro was valid. Accordingly, we affirm the judgment of dismissal of Lloyds with prejudice. We explain our decision in greater detail below.
I
We first briefly set out this matter’s procedural history. Mr. Rapalo-Alfaro filed his initial petition against George Lee, Jr., and Liberty Mutual, Mr. Lee’s liability insurer, in August 2011. He alleged that on September 1, 2010, he was operating a motor vehicle on 1-610 in New Orleans when it was struck in the rear by an automobile operated by Mr. Lee. Mr. Rapalo-Alfaro also asserted that Mr. Lee’s actions were the sole cause of the accident and that Mr. Lee and Liberty Mutual are liable to him for damages in an amount in excess of $50,000.00.[2] Mr. Lee and Liberty Mutual answered the petition soon thereafter and the parties engaged in sporadic discovery practice for several years.
Mr. Rapalo-Alfaro subsequently amended his petition to add Lloyds as a defendant. In the amended petition, he alleged that on the date of the accident he was insured by a Lloyds’ automobile liability policy that provided, among other things, medical payments and uninsured/underin-sured motorist coverage. He also asserted that Mr. Lee was either uninsured or un-derinsured on the date of the accident. Lloyds answered the petitions and denied that it insured Mr. Rapalo-Alfaro on the date of the accident and that Mr. Lee was either uninsured or underinsured.
| aSubsequently, Lloyds sought dismissal from this matter by way of two motions for summary judgment.[3] The trial judge denied the first motion, but granted the second.[4] Lloyds did not seek supervisory review of the judgment that denied its first motion for summary judgment. See La. C.C.P. art. 968.
Lloyds filed its second motion for summary judgment on September 22, 2014. It argued in this motion that there are no genuine issues of material fact and that Mr. Rapalo-Alfaro’s claims against it should be dismissed with prejudice because he: 1) did not contract with Lloyds for medical payment coverage; and 2) rejected uninsured motorist coverage by way of a validly executed rejection form. In support of its motion, Lloyds attached certified copies of its policy with Mr. Rapalo- *1177 Alfaro, as well as his application for coverage.
Mr. Rapalo-Alfaro subsequently filed an opposition memorandum. Filing no affidavits or exhibits in opposition to Lloyds’ motion, he also failed to answer Lloyds’ assertion that he never applied for medical payment coverage. Rather, he noted initially that his uninsured motorist rejection form — like his entire policy with Lloyds— was completed electronically. He then argued that Lloyds’ motion should be denied because it failed to establish that he agreed to complete his uninsured motorist rejection form electronically. Mr. Rapalo-Alfaro also asserted that Lloyd’s motion should be denied because it failed to establish that the name, [4date, initials, and signature on the uninsured motorist rejection form — all of which were completed electronically — are attributable to him.[5] Similarly, because the rejection of uninsured motorist coverage was completed electronically, Mr. Rapalo-Alfaro claimed that Lloyds’ uninsured rejection form prevented him from making any kind of meaningful selection, thus violating Louisiana law.
Lloyds filed a reply brief and attached a copy of a document dated the same day as his policy’s application, June 28, 2010. Entitled “Digital Signature Acceptance Confirmation,” the document purports to feature Mr. Rapalo-Alfaro’s signature, a digital ID number that has been associated with his signature, a box with his initials, and the following language: “By clicking the box, I agree the signature and initials I have selected above will be the electronic representation of my signature for use on the following insurance documents which include legally binding contracts. I further understand that signing documents using this electronic signature will have the same legally binding effect as signing my signature using pen and paper.” [6] The exhibit indicates that the applicable box is initialed “JR.”
The parties argued the merits of Lloyds’ motion before the trial judge. At the hearing, counsel for Mr. Rapalo-Alfaro objected to Lloyds’ use of the Digital Signature Acceptance Confirmation. The trial judge overruled the objection and | Raccepted the exhibit into evidence.[7] At the close of the hearing the trial judge granted Lloyds’ motion and signed a judgment dismissing with prejudice Mr. Rapa-lo-Alfaro’s claims against Lloyds. Mr. Ra-palo-Alfaro subsequently filed a timely motion for devolutive appeal.[8]
II
We now examine the statutory law and jurisprudence that governs the rejection of uninsured motorist coverage as well as our review of Lloyds’ motion for summary judgment.
A
In Louisiana, the presence of uninsured motorist coverage in an insurance policy is determined by contractual provisions and by applicable statutes. See *1178 Green ex rel. Peterson v. Johnson, 14-0292, pp. 4-5 (La.10/15/14), 149 So.3d 766, 771. The object of such coverage is to provide full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance. See Daigle v. Authement, 96-1662, p. 2 (La.4/8/97), 691 So.2d 1213, 1215.
Under Louisiana’s uninsured motorist statute, La. R.S. 22:1295, all automobile liability insurance policies that are delivered or issued for delivery in Louisiana and arising out of ownership, maintenance, or use of a motor vehicle registered in Louisiana and designed for use on public highways must provide | ^uninsured motorist coverage equal to the liability provided for bodily injury, unless it has been validly rejected or lower uninsured motorist limits have been selected. See Magnon v. Collins, 98-2822, p. 5 (La.7/7/99), 739 So.2d 191, 195. The requirement that an automobile liability policy contain uninsured motorist coverage is an implied amendment of any such policy, even one that does not expressly address the subject matter, as uninsured motorist coverage will be read into the policy unless validly rejected. See Green, 14-0292, p. 5, 149 So.3d at 771; Duncan v. U.S.A.A. Ins. Co., 06-0363, p. 4 (La.11/29/06), 950 So.2d 544, 547.
The coverage requirement of La. R.S. 22:1295(l)(a)(i), however, “is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage.” [9] A motor vehicle liability |7insurance applicant’s “rejection, selection of lower limits, or selection of economic-only. coverage shall be made only on a form prescribed by the commissioner of insurance.” See La. R.S. 22:1295(l)(a)(ii). This statute also provides that the “prescribed form shall be provided by the insurer and signed by the named insured or his legal representative.” Id. The statute establishes that a “properly completed and *1179 signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage.” Id.
In Duncan, the Supreme Court identified six tasks which are required in order to complete the uninsured motorist rejection form prescribed by the Commissioner of Insurance: 1) initialing the selection or rejection of coverage chosen; 2) if limits lower than the policy limits are chosen (available in options 2 and 4), then filling in the amount of coverage selected for each person and each accident; 3) printing the name of the named insured or legal representative; 4) signing the name of the named insured or legal representative; 5) filling in the policy number; and, 6) filling in the date. 06-0363, pp. 11-12, 950 So.2d at 551. See also Harper v. Direct General Ins. Co., 08-2874, p. 2 (La.2/13/09), 2 So.3d 418, 419.
[[Image here]]
We apply a de novo standard of review in examining trial court rulings on summary judgment motions. See Brooks v. Louisiana Citizens Fair Plan, 08-0908, p. 5 (La.App. 4 Cir. 1/28/09), 4 So.3d 899, 902. Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate: whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Id. A court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. See La. C.C.P. art. 966 B; Catahoula Parish School Board v. Louisiana Machinery Rentals, LLC, 12-2504, pp. 8-9 (La.10/15/13), 124 So.3d 1065, 1071.
On a motion for summary judgment, the burden of proof remains with the movant. See La. C.C.P. art. 966 C(2). However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. See La. C.C.P. art. 966 C(2). If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment should be granted. Id.
_kC
 In light of the issues before us, and the nature of summary judgment proceedings, we think it important to next briefly establish the parties’ respective burdens of proof in the event this case were to proceed to trial. When seeking recovery under a policy of insurance, it is the plaintiffs burden to establish every essential fact and that his claim is within the policy coverage. See Mercadel v. Tran, 92-0798 (La.App. 4 Cir. 3/29/94), 635 So.2d 438, 440. The Supreme Court, nevertheless, has held that the uninsured motorist statute should be liberally construed. See Duncan, 06-0363, p. 4, 950 So.2d at 547. Because uninsured motorist coverage is an “implied amendment of any automobile liability policy” issued in Louisiana, and will be read into the policy “even when not expressly addressed,” a plaintiff seeking to prove the presence of such coverage need only show that at the time of the loss he was insured by a policy of “automobile liability insurance delivered or issued for delivery in Louisiana and arising out of ownership, maintenance, or use of a motor *1180 vehicle registered in Louisiana and designed for use on public highways.” La. R.S. 22:1295(l)(a)(l); Green, 14-0292, p. 5, 149 So.3d at 771.
Conversely, the uninsured motorist statute’s liberal construction requires that “the statutory exceptions to coverage be interpreted strictly.” Duncan, 06-0363, p. 4, 950 So.2d at 547. Any exclusion from coverage in an insurance policy must, therefore, be clear and unmistakable. See Duncan, 06-363, pp. 4-5, 950 So.2d at 547. “In accordance with this strict construction, requirement, the insurer bears the |inburden of proving any insured named in the policy rejected in writing the coverage equal to bodily injury coverage or selected lower limits.” Duncan, 06-0363, p. 5, 950 So.2d at 547. As noted, a properly completed uninsured motorist coverage form where the signatory rejected coverage creates a rebuttable presumption that the insured knowingly rejected uninsured motorist coverage. See Terrell v. Fontenot, 11-1472, p. 4 (La.App. 4 Cir. 6/27/12), 96 So.3d 658, 661. The burden of proof then shifts to the insured to present evidence that the uninsured motorist selection form was in fact not properly completed. See Cortes-Valencia v. Crews, 14-234, p. 5 (La.App. 5 Cir. 10/29/14), 164 So.3d 204, 207.
Ill
We turn now to ’discuss the evidence presented to the trial judge in connection with Lloyds’ motion. In addition to the ■original and amending petitions, Lloyds also introduced a properly authenticated copy of Mr. Rapalo-Alfaro’s Lloyds’ automobile liability policy. The policy indicates that the application for coverage was prepared and signed on June 28, 2010, and that Mr. Rapalo-Alfaro contracted for the statutory minimum amount of coverage. See La. R.S. 32:861; and, La. R.S. 32:900.[10] Pointedly, Mr. Rapalo-Alfaro. did not contract for medical payments coverage and the policy’s declaration sheet lists no coverage for medical payments or losses attributable to uninsured motorists.
InThe policy also includes an “uninsured/underinsured motorist bodily injury coverage form.” The document complies with La. R.S. 22:1295(l)(a)(ii) and is in the form prepared by Louisiana’s Commissioner of Insurance. Our examination of the form shows. that Mr. Rapalo-Alfaro initialed the box which indicates that he declined uninsured motorist bodily injury coverage. Further, we note that his liability policy’s number is typed onto the form, as is the name of the insurer. Further, Mr. Rapalo-Alfaro’s name is typed onto the form, as is the date — June 28, 2010. The document has also been signed, albeit electronically, by Mr. Rapalo-Alfaro. In fact, all signatures affixed by all parties to the policy documents — save perhaps a countersignature on the declarations page-are designated as digital signatures and assigned discrete ID numbers.
In contrast with Lloyds, Mr. Rapalo- . Alfaro introduced no exhibits or affidavits in connection with his opposition to Lloyds’ motion. That is to say, Mr. Rapalo-Alfaro does not deny, by way of testimony or affidavit, that he waived uninsured motorist coverage, or that he signed the unin *1181 sured motorist rejection form. Similarly, Mr. Rapalo-Alfaro does not claim that he desired to purchase uninsured motorist coverage, that he did not understand the form as presented to him, or that he was either denied or prohibited from making that choice in any way. Mr. Rapalo-Alfa-ro, rather, opposed Lloyds’ motion on legal grounds, arguing variously that the form as prepared by Lloyds violates La. R.S. 22:1295. In ruling on Lloyds’ motion, the trial judge addressed solely legal issues.
_biv
We now discuss Mr. Rapalo-Alfaro’s assignments of error in light of the “field of evidence properly subject to the Court’s consideration” and the controlling law. Rand v. City of New Orleans, 14-2506, p. 5 (La.6/30/15), 173 So.3d 1148, 1151, 2015 WL 3972705 at *3. As he did in the trial court, he first argues that the trial judge should have denied the motion because Lloyds failed to establish that he agreed to complete his uninsured motorist rejection form electronically. Mr. Rapalo-Alfaro also asserts that Lloyds’ motion should be denied because it failed to establish that the name, date, initials, and signature on the uninsured motorist rejection form — all of which were completed electronically— are attributable to him. Similarly, because the rejection of uninsured motorist coverage was completed electronically, Mr. Ra-palo-Alfaro claims that Lloyds’ uninsured rejection form prevented him from making any kind of meaningful selection, thus violating Louisiana law.[11] Mr. Rapalo-Alfaro also asserts that the trial judge erred when he accepted into evidence the “Digital Signature Acceptance Confirmation” which was attached to Lloyds’ reply brief.
We now address Mr. Rapalo-Alfaro’s first two related contentions. He argues that the trial judge erred in granting the motion because Lloyds failed to establish that: 1) he agreed to complete his uninsured motorist rejection form electronically; and 2) the name, date, initials, and signature on his uninsured | ^motorist rejection form are attributable to him. Because he has failed to put the matter at issue through affidavit or testimony, we decline to reverse the trial court’s judgment on these grounds.
At the outset, we note that Mr. Rapalo-Alfaro concedes that an uninsured motorist form can be completed and signed electronically. See Bonck v. White, 12-1522, p. 7 (La.App. 4 Cir. 4/24/13), 115 So.3d 651, 654, where we held that “the Uniform Electronic Signature Law, La. R.S. 9:2606, et seq., applies to automobile insurance policies and required UMBI forms, and that signatures includes initialing.” And he does not deny that he agreed to complete both his liability policy application, and his uninsured motorist rejection form, electronically.
Rather, he makes the legal assertion that Louisiana’s Uniform Electronic Transactions Act compels Lloyds to first establish that he specifically consented to execute his uninsured motorist waiver form electronically. Mr. Rapalo-Alfaro, however, points to no language in the Act, or interpretive jurisprudence, which would impose such a burden upon Lloyds. We have also reviewed the Act and can find no language, whether express or implied, which imposes such an additional burden on a party seeking to enforce the terms of an electronically executed contract. In fact, our examination of the Act, and its *1182 official comments, convince us of the opposite — that the law was crafted to prohibit the imposition of such additional burdens upon the use of electronic signatures and the enforcement of electronic transactions.
Writing in a prefatory note to the Act, Professor Henry Gabriel,[12] then of Loyola College of Law and now of the Elon University School of Law, states that the “purpose of the Louisiana Uniform Electronic Transactions Act is to remove barriers to electronic commerce by validating and effectuating electronic records and signatures.” He clarifies that the Act “is not a general contracting statute — the substantive rules governing agreements and other legal transactions remain unaffected by this Chapter.” Henry Gabriel, Prefatory Note to the Louisiana Uniform Electronic Transactions Act, La. R.S. 9:2601-2621 (West 2005). Language in the Act bears out this observation. Section 2606 indicates that the Act is to be construed and applied to, among other things, “facilitate electronic transactions consistent with other applicable law.” La. R.S. 9:2606(1). Section 2607 A of the Act states that a “record or signature may not be denied legal effect or enforceability solely because it is in electronic form.” La. R.S. 9:2607 A. Similarly, the Act provides that a “contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation.” La. R.S. 9:2607 B. Therefore, the Act supports the proposition that if “a law requires a record to be in writing, an electronic record satisfies the law.” La. R.S. 9:2607 C. Likewise, if “a law requires a signature, an electronic signature satisfies the law.” La. R.S. 9:2607 D.
| ^Section 2607’s official comments indicate that this section “sets forth the fundamental premise” of the Act — “that the medium in which a record, signature, or agreement is created, presented or retained does not affect its legal significance.” La. R.S. 9:2607, Official Comments — 2001, (a). Subsections A and B of La. R.S. 9:2607, therefore, are “designed to eliminate the single element of medium as a reason to deny effect or enforceability to a record, signature, or agreement. The fact that the information is set forth in an electronic, as opposed to paper, record is irrelevant.” La. R.S. 9:2607, Official Comments — 2001, (a).
In light of these premises, the Act provides specifically that an “electronic record or electronic signature is attributable to a person if it was the act of the person.” La. R.S. 9:2609 A(l). Therefore, whether “any particular record is ‘signed’ is a question of fact. Proof of that fact must be made under other applicable law. This Chapter simply assures that the signature may be accomplished through electronic means.” La. R.S. 9:2602, Official Comments — 2001, 7(a).
Clearly, electronic signatures under Louisiana’s Electronic Transactions Act are given the same legal effect as all other types of signatures. Lloyds, accordingly, has no additional burden of proof with respect to Mr. Rapalo-Alfaro’s electronic signature unless he specifically denies signing the uninsured motorist waiver form.[13] The matter in this case, however, *1183 is not in genuine dispute because |1fiMr. Rapalo-Alfaro has not denied. — by way of allegation in his petitions, sworn testimony, or notarized affidavit — that the electronic signature on the uninsured motorist form is attributable to him.
Similarly, because he does not deny completing the uninsured motorist rejection form, Lloyds has no burden at this time to establish that the name, date, initials, and signature on the form are attributable to Mr. Rapalo-Alfaro. See La. R.S. 22:1295(l)(a)(ii) indicates plainly that a properly completed uninsured motorist rejection form creates a rebuttable presumption that the insured rejected such coverage. The law, therefore, burdens Mr. Rapalo-Alfaro with showing that the signature and other markings on the form are not attributable to him. In the context of this summary judgment motion, Mr. Rapalo-Alfaro was required to show that a genuine issue of material fact was present with respect to this issue. Because he has yet to deny anything, however, there is no genuine issue of material fact and we must presume that the uninsured motorist rejection form was properly completed by, and attributable to, Mr. Rapalo-Alfaro.[14]
B
We next address Mr. Rapalo-Al-faro’s argument that his uninsured rejection form violated Louisiana law because the electronic nature of its preparation prevented him from making any kind of meaningful uninsured motorist selection. h7He specifically points to the fact that when presented to him, lines one through three on the form — which provide a place for an applicant to place his initials indicating the selection of varying levels of uninsured motorist coverage — contained the pre-filled and marked letters, “NA.” He contends that the preprinted nature of the form left him with no choice but to place his initials next to selection four, thus indicating that he did not want uninsured motorist coverage. He, accordingly, argues that the form as presented to him violates La. R.S. 22:1295. In support, Mr. Rapalo-Alfaro relies upon Johnson v. Government Employees Ins., Co., 07-1391 (La.App. 3 Cir. 4/9/08), 980 So.2d 870. After examining Johnson, however, we find it inappo-site to the present matter.
In Johnson, the plaintiff was involved in an automobile accident and, claiming damages, sued the other driver, her liability insurer, and his own insurer asserting uninsured motorist coverage. The plaintiff settled his claims against the other driver and her liability insurer. His own insurer, however, denied coverage, and produced an uninsured motorist rejection form, which, on its face, complied with the requisites of La. R.S. 22:1295(l)(a)(ii), and asserted the rebuttable presumption contained within the statute.
Following a trial on the merits, the trial judge concluded, in spite of the properly *1184 completed rejection form, that the plaintiff/insured did not knowingly reject uninsured motorist coverage. The trial court found that when the plaintiff first contacted his insurance agent he stated specifically that he wanted “full coverage” and was given an exact quote for such over the telephone. When he |1sarrived at the agent’s office with a check, however, the plaintiff was presented with, among other things, a form in which lines one through three were pre-filled and marked “N/A” by the agent. The trial court concluded that the parties acted in haste — the transaction occurred hurriedly at the close of the business day — and that the “unusual set of circumstances resulted in a failure to explain the waiver of uninsured motorist coverage after an affirmative request of coverage.” Johnson, 07-1391, p. 2, 980 So.2d at 873. The trial court ruled for the plaintiff and found that the parties’ haste “contributed to the failure of communication between the parties and this unique chain of events in which Mr. Johnson was not delivered the product requested by him.” Id.
A divided three-judge panel of the Third Circuit unanimously affirmed the trial court’s judgment, albeit for differing reasons. Judge Amy, with whom Judge PaintER joined, opined that the “resolution of this case turns upon review of the trial court’s factual findings.” Johnson, 07-1391, 980 So.2d at 877 (Amy, J., concurring in the result).[15] The prevailing opinion, therefore, affirmed the trial court’s judgment after finding that the trial court was not manifestly erroneous in concluding that the plaintiff was inadvertently delivered a product he had not requested. Id.
The prevailing opinion in Johnson, which affirmed a trial court’s post-trial factual findings, clearly lends no weight to Mr. Rapalo-Alfaro’s legal assertions. Unlike the Johnson plaintiff, Mr. Rapalo-Alfaro has never asserted either by way hnof testimony or affidavit that he asked Lloyds for “full coverage,” was prevented by Lloyds from purchasing uninsured motorist coverage, or was confused by the uninsured motorist rejection form at the time of its completion. Mr. Rapalo-Alfaro has instead come forward with nothing to rebut the statutory presumption that his uninsured motorist rejection form reflects anything other than a desire to reject uninsured motorist coverage. The trial court correctly declined to conclude that Mr. Rapalo-Alfaro’s electronically pre-filled and marked uninsured motorist rejection form prevented him from making any kind of meaningful uninsured motorist selection.
DECREE
We affirm the trial court’s judgment of November 14, 2014, which dismissed with prejudice all claims of Jesus Rapalo-Alfaro against Certain Underwriters At Lloyds London, Subscribing To Policy No. Lla01000129. All costs of this appeal are taxed to appellant.[16] See La. C.C.P. art. 2164.
AFFIRMED.

. The full name of the defendant is Certain Underwriters at Lloyds At Lloyd's London, Subscribing To Policy No. Lla01000129.

. Neither the Liberty Mutual policy, nor any of Mr. Alfaro-Rapalo’s medical records, is in the record before us.

. In its initial motion, Lloyds argued that Mr. Rapalo-Alfaro’s claims against it should be dismissed because it had validly cancelled his policy prior to the accident.

.The trial court denied Lloyds’ first motion after concluding that it failed to follow the dictates of La. R.S. 22:1266 D(l) when it attempted to cancel the policy. This provision of the Insurance Code provides that a notice of cancellation is ineffective unless it is sent to the insured via certified mail.

. At no time, however, has Mr. Rapalo-Alfaro ever specifically denied Lloyds’ assertion that he rejected uninsured motorist coverage when he applied for liability coverage.

. Mr. Rapalo-Alfaro's application for liability insurance with Lloyd’s, as well as his uninsured motorist coverage form, indicate that they were completed on the same date as the Digital Signature Acceptance Confirmation.

. Mr. Rapalo-Alfaro also asserts as error on appeal the introduction into evidence of this document. We address this issue at n. 14, post.

. He has not appealed the trial court’s dismissal of his claim for medical payments coverage. That portion of the judgment is, accordingly, final.

. La. R.S. 22:1295(l)(a)(l) provides:
No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item (l)(a)(ii) of this Section. In no event shall the policy limits of an uninsured motorist policy be less than the minimum liability limits required under R.S. 32:900, unless economic-only coverage is selected as authorized in this Section. Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy when the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates. The coverage provided under this Section may exclude coverage for punitive or exemplary damages by the terms of the policy or contract. Insurers may also make available, at a reduced premium, the coverage provided under this Section with an exclusion for all noneconomic loss. This coverage shall be known as "economic-only” uninsured motorist coverage. Noneconomic loss means any loss other than economic loss and includes but is not limited to pain, suffering, inconvenience, mental anguish, and other noneconomic damages otherwise recoverable under the laws of this state.

. Louisiana’s compulsory motor vehicle liability security law applies to all motor vehicles registered in Louisiana, “except those motor vehicles used as agricultural or forest vehicles during seasons when they are not used on the highway, those used primarily for exhibit or kept primarily for use in parades, exhibits, or shows, and lease-bound mobile rig haulers.” La. R.S. 32:861. Those vehicles to which the law applies are mandated to have bodily injury liability coverage limits of $15,000/$30,000 and property damage liability coverage limits of $25,000. See La. R.S. 32:900.

. As noted, Mr. Rapalo-Alfaro does not assign as error the trial judge’s dismissal of his claims against Lloyds for medical payments coverage.

. We observe that Professor Gabriel is an acknowledged expert in the field of international and domestic commercial law. He has written more than nine books and fifty law review articles, and has served as a U.S. delegate to the U.N. Commission on International Trade where he worked on the subject of electronic commerce.

. The electronic signature on the uninsured motorist rejection form is identical to Mr. Rapalo-Alfaro's other electronic signatures on his application for insurance and liability pol *1183 icy with Lloyds. If he were to deny the signature on the rejection form, he would, in effect, be denying it for the remainder of the policy, thus leaving him with no policy at all.

. Because there is no genuine issue of fact as to his signature, we need not address his contention that the trial judge erred in accepting into evidence the “Digital Signature Acceptance Confirmation.” Lloyds first attached this document to its trial court reply brief. Even though we did not consider this document in our field of evidence, we observe that forthcoming changes to La. C.C.P. art. 966 will preclude the attaching of documents to reply briefs. In its most recent legislative session, the Louisiana Legislature amended La. C.C.P. art. 966 to provide that “[n]o additional documents may be filed with the reply memorandum.” See Acts 2015, No. 422, which provides that its provisions will become effective on January 1, 2016.

. The opinion of Judge Cooks, the organ of the court, affirming the trial court's judgment can be read to stand for a blanket prohibition against pre-filled and marked forms.

. See Garay-Lara v. Cornerstone National Ins. Co., 13-2016 (La.App. 1 Cir. 5/2/14), 145 So.3d 423.