STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

07-1391


CLINTON L. JOHNSON

VERSUS

GOVERNMENT EMPLOYEES INSURANCE COMPANY, ET AL.
BARBARA L. NICHOLS AND
AMERICAN CENTURY CASUALTY COMPANY


**************
APPEAL FROM THE
ALEXANDRIA CITY COURT
PARISH OF RAPIDES, DOCKET NO. 100,318
HONORABLE RICHARD E. STARLING, JR., CITY COURT JUDGE


**************
SYLVIA R. COOKS
JUDGE
**************


Court composed of Sylvia R. Cooks, Marc T. Amy, and J. David Painter, Judges.

Amy, J., concurs in the result and assigns reasons.
Painter, J., concurs in the result for the reasons assigned by Judge Amy.

**AFFIRMED.**

Wilbert J. Saucier, Jr., Inc.
A Professional Law Corporation
826 Main Street
Pineville, LA 71361
(318) 473-4146
COUNSEL FOR PLAINTIFF/APPELLEE:
        Clinton L. Johnson

Michael L. Glass, Esquire
1733 White Street
Alexandria, LA 71301
(318) 484-2917
COUNSEL FOR PLAINTIFF/APPELLEE:
        Clinton L. Johnson

**Paul M. Adkins**
**Scott R. Wolf**
**P.O. Box 1126**
**400 Texas Street  #1500**
**Shreveport, LA 71163**
**(318) 221-6858**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **American Century Casualty Company**

**COOKS, Judge.**

## STATEMENT OF THE CASE

This case arises out of an automobile accident involving Clinton L. Johnson and Barbara L. Nichols. Mr. Johnson filed suit against Ms. Nichols and her insurer, Government Employees Insurance Company. He also asserted a claim against his insurer, American Century Casualty Company, under the Uninsured Motorist provision. Mr. Johnson settled his claim against Ms. Nichols and her insurer. The sole issue presented for our review is whether the UM selection form, relied on by the insurer, met the formal requirements of the law to effectuate a knowing waiver of UM coverage under the policy. In this case, the blanks for the selection of UM coverage were pre-filled by the agent with the designation "N/A" prior to presentation to the insured. The only blank left open was the one rejecting UM coverage under the policy. Initially, the trial court granted a motion for summary judgment in favor of Mr. Johnson finding UM coverage existed under the policy. This court reversed the judgment of the trial court finding a genuine issue of material fact existed as to "whether or not Johnson validly rejected UM coverage with American Century by making a meaningful selection with respect to UM coverage." *Johnson v. Government Employees Insurance Company, et al.*, 05-476, p.6 (La.App. 3 Cir. 11/2/05), 916 So.2d 451, 455. Following a full trial on the merits, the trial court found Mr. Johnson did not make a meaningful rejection of UM coverage and granted judgment in his favor. American Century appeals.

## STATEMENT OF THE FACTS

The facts surrounding this dispute are as follows. At approximately 4:30 p.m. on February 4, 2004, Mr. Johnson called the Harlan Insurance Agency to obtain automobile insurance on a truck he purchased from M & M Dodge in Alexandria.

1

Vanelia Lynn Bass, an agent at Harlan, answered the call. Ms. Bass advised Mr. Johnson that the agency closed at 5:00 p.m. but his application would be processed if he arrived shortly after closing. Mr. Johnson testified he advised Ms. Bass he wanted "full coverage" on his vehicle. He was quoted a price over the telephone of $214.00. Although Ms. Bass testified she did not recall the conversation with Mr. Johnson, she did testify that by definition "full coverage" would have meant to her the inclusion of uninsured motorist coverage. Mr. Johnson arrived at the agency shortly after 5:00 p.m. with a check in the amount of $214.00. The agent handed him a form entitled "Uninsured/Underinsured Motorist Bodily Injury Coverage Form." The form contained a list of five options. Each option was preceded by a blank space for selecting the type of uninsured motorist coverage to be purchased. Of the five options, the only blank which was left open, which Mr. Johnson was asked to initial, was the option which stated: "I do not want UMBI Coverage." All other blanks for the selection of UM coverage were pre-filled and marked "N/A" by Ms. Bass prior to presentation of the form to Mr. Johnson. Mr. Johnson initialed the only blank left open and signed the form. Based on the evidence presented, the trial court concluded Mr. Johnson did not knowingly reject uninsured motorist coverage. The trial court stated:

> [T]he court believes that Mr. Johnson requested "full coverage" from Ms. Bass pursuant to a telephone conversation prior to leaving M & M Dodge. Due to the late hour, and the fact the actual purchase would occur after normal work hours, Ms. Bass prepared the application to be submitted upon Mr. Johnson's arrival. The court believes Mr. Johnson requested "full coverage" at the time of the telephone conversation and Ms. Bass mistakenly failed to include this coverage in the application. This unusual set of circumstances resulted in a failure to explain the waiver of uninsured motorist coverage after an affirmative request of the coverage by Mr. Johnson. Understandably, all of the parties were acting in haste to consummate this transaction at the end of the business day. This contributed to the failure of communication between the parties and this unique chain of events in which Mr. Johnson was not delivered the product requested by him.

2

Because we find the UM form was not properly completed, we affirm the decision the trial court and find the insurer failed to establish Mr. Johnson executed a valid waiver of UM coverage.

## LAW AND DISCUSSION

Uninsured Motorist (UM) coverage in Louisiana is governed by La.R.S. 22:680(1)(a)(i) which provides, in relevant part:

> No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item (1)(a)(ii) of this Section.

This public policy statute is designed to provide "full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance. *Duncan v. U.S.A.A. Insurance Company*, 06-363, p.4 (La. 11/29/06), 950 So.2d 544, 547. Regardless of the "language of the policy, the intentions of the parties, or the presence or absence of a premium charge or payment," the law imposes UM coverage unless validly waived. *Roger v. Estate of Moulton*, 513 So.2d 1126, 1131-32 (La.1987). A waiver form which does not meet the formal requirements of the law does not constitute a valid rejection of UM coverage. Prior to 1997, insurers were allowed to design their own UM waiver forms and the courts were required to determine whether the form designed by the insurer met statutory

3

and jurisprudential requirements.[1]  However, in 1997, the legislature recognized the

inherent problems in this approach and amended the statute to provide (1) any waiver

of UM coverage must be on a form designed by the Louisiana Commissioner of

Insurance; and (2) the form must be properly completed and signed.

Louisiana Revised Statutes 22:680(1)(a)(ii) provides, in relevant part:

> Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance.  The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative.  The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto.  A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage.

Only when the form is prescribed by the commission *and* properly completed

and signed can the insurer benefit from the rebuttable presumption that the insured

knowingly rejected UM coverage.

> This presumption exists because the prescribed form, if properly completed, clearly evidences the insured's intent to waive UM coverage.  The legislature, therefore, shifts the analysis away from the muddied question of whether the insured made an informed decision to knowingly waive coverage.  Instead, the legislature states if the insurer uses the form prescribed by the commissioner of insurance and makes certain that it is properly completed and signed, then the insurer receives a presumption that the insured's waiver of coverage was knowing.

*Duncan,* 950 So.2d at 552.

A properly completed UM waiver form requires six formalities which are

sacrosanct and must be complied with by the insurer.  The six formalities are: (1) the

insured must initial the selection or rejection chosen to indicate that the decision was

made by the insured; (2) if lower limits are selected, then the lower limits are entered

---

[1] A history of the development of UM coverage and the methods used by insurers to effectuate a waiver by an insured is provided in *Duncan*, 950 So.2d 544.

4

on the form to denote the exact limits; (3) the insured or legal representative must sign the form evidencing the intent to waive UM coverage; (4) the form must include his or her printed name to identify the signature; (5) the insured dates the form to determine the effective date of the UM waiver; and (6) the form must include the policy number to demonstrate which policy it refers to. *Duncan,* 950 So.2d 544; *Gray v. American Nat. Prop. & Cas. Co.,* 07-1670 (La. 2/26/08), _So.2d _.

In *Duncan,* 950 So.2d 544, the issue presented was whether UM coverage was validly waived when the line for the policy number was left blank. The insurer argued "even if the form is not properly completed, the result is merely that the presumption does not apply and therefore the insurer must prove the insured knowingly waived coverage." *Id.* at 553. The supreme court rejected this approach holding a form which is not properly completed will not effectuate a waiver of UM coverage regardless of proof submitted by the insurer as to the intention of the parties. The court stated:

> This argument conflates the issues of form and intent. We find that, "The expression of a desire not to have UM coverage, however clear, does not necessarily constitute a valid rejection if the expression of rejection does not meet the formal requirements of law." As stated above, the legislature gave the commissioner of insurance the authority to create a form and stated that "such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance." Pursuant to that mandate, compliance with the form prescribed by the commissioner of insurance is necessary for the UM waiver to be valid. The insurer cannot rely on the insured's intent to waive UM coverage to cure a defect in the form of the waiver. By failing to include the policy number in the blank provided on the form, the insurer failed to effectuate a valid rejection of UM coverage.

*Duncan,* 950 So.2d at 553. (citations omitted).

In *Gray*, the insured initialed and signed the UM selection form in blank and mailed the form back to the agency. The agent made the selection of the amount of UM coverage on the form and also backdated the form to conform to the date of

5

signature. The insurer argued the UM form, although initialed and signed in blank by the insured and later completed by the agent, did in fact reflect the true intent of the parties. The insurer submitted evidence which established the school board approved liability coverage in the amount of $1,000,000.00, but only $100,000.00 in UM coverage. The supreme court relied on *Duncan* and found "four of the 'six tasks' required by the Insurance Commissioner for a valid selection of lower UM coverage limits were not completed until after the insured's representative sent the form to the insurance agent." *Id.* These irregularities in completion of the form were fatal to the insured's argument that the school board fully intended to purchase only $100,000.00 worth of UM coverage under the policy and the selection was knowingly made. The supreme court quoting *Duncan,* noted: "'**[C]ompliance with the form prescribed by the commissioner of insurance is necessary for the UM waiver to be valid**.' The insurer cannot rely on the insured's intent to waive UM coverage to cure a defect in the form of the waiver." *Gray* at __, *quoting Duncan*, 950 So.2d at 553. (emphasis in original).

*Duncan* and *Gray* mandate that the form must be properly completed prior to any discussion regarding whether the insured knowingly and consciously waived UM coverage. The formalities mandated by statute and jurisprudence are not merely procedural exercises or "rote" tasks, but rather are substantive requirements which must be properly completed in order to effectuate a valid waiver of UM coverage. *Gray* at p. 9. In *Gray,* the supreme court stated:

> [T]his court distinguished failures to comply with the UM selection form requirement established by the Insurance Commissioner from other types of clerical errors in insurance contracts that might be subject to reform. The failure to comply with the requirements for confecting a valid UM selection form are not subject to reformation.

*Gray* at __.

So strong are the policy considerations behind the UM statute that a form which complies to the letter with the substantive formalities only creates a rebuttable presumption in favor of the insurer that the insured knowingly and consciously waived the protection of UM coverage. On the other hand, a form which fails to comply with even one formality cannot stand even in the face of evidence that the parties intended to waive or reduce UM coverage.

Turning to the case before us, we find the insurer failed to comply with the first formality which requires that the insured *chose* between types of UM coverage and outright rejection of all UM coverage. Compliance with this formality ensures that the insured by his own volition read and reviewed each available selection and consciously and knowingly made a decision by the placement of his initials on the blank reflecting his choice. Mr. Johnson was not given any choice or option because the form had only one available selection when it was presented to him. The only blank which was left open, which Mr. Johnson was asked to initial, was the selection which stated: "I do not want UMBI Coverage." All other blanks for the selection of UM coverage were pre-filled and marked "N/A" by Ms. Bass prior to the presentation of the form to Mr. Johnson. He initialed the only blank left open and signed the form. American Century attempted to refute Mr. Johnson's testimony that the form was pre-filled by submitting the testimony of Mark Harlan, the agency owner. Mr. Harlan testified it is not customary for agents to pre-fill and issue a policy ahead of time prior to obtaining the payment. However, in this case, the evidence is that Ms. Bass did pre-fill the form prior to Mr. Johnson's arrival at the agency. The "N/A" designation was typed into the blanks which proves the blanks were filled in ahead of time and printed out in anticipation of Mr. Johnson's arrival shortly after closing. There is not a scintilla of evidence to suggest the insured had access to the form before it was

7

presented to him or otherwise placed the computer generated "N/A" in the blank spaces before the form was signed. This evidence supports Mr. Johnson's testimony that he arrived at the agency with his check and was handed a pre-printed form to sign which left him with no option except to reject UM coverage. He also testified there was no discussion between him and Ms. Bass regarding his selection. He did testify, which testimony was not refuted, that he told Ms. Bass over the telephone he wanted "full coverage." We have examined the evidence presented and find there is nothing to indicate Mr. Johnson made a conscious choice among several options. While in *Gray* a post-filled form was found defective, we find in this case, a form which is pre-filled by the agent leaving the insured with no choice but to reject UM coverage is equally defective. Accordingly, we affirm the decision of the trial court finding the insurer failed to establish a waiver of UM coverage.

**DECREE**

Based on a review of the record, we affirm the decision of the trial court. All costs of this appeal are assessed to American Century Casualty Company.

**AFFIRMED.**

8

NUMBER 07-1391

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

CLINTON J. JOHNSON

VERSUS

GOVERNMENT EMPLOYEES INSURANCE CO., ET AL.

AMY, J., concurring in the result.

I agree that an affirmation is required. In my opinion, however, resolution of this case turns upon review of the trial court's factual findings. After a full trial on the merits, the trial court concluded that the plaintiff requested "full coverage" and that the insurance representative "mistakenly failed to include this coverage in the application." The trial court noted that "[t]his unusual set of circumstances resulted in a failure to explain the waiver of uninsured motorist coverage after an affirmative request of the coverage by Mr. Johnson" and ultimately resulted in the delivery of a product not requested by the plaintiff. The record supports this determination. Accordingly, I would affirm the trial court's determination as it was not manifestly erroneous. In light of this conclusion, I do not proceed to the legal analysis expressed by Judge Cooks.

For these reasons, I respectfully concur in the result.