# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**17-491**

**JOEY HIGGINBOTHAM**
**VERSUS**
**USAGENCIES CASUALTY INSURANCE COMPANY, INC., ET AL.**

**CONSOLIDATED WITH**

**17-497**

**JOEY HIGGINBOTHAM**
**VERSUS**
**USAGENCIES CASUALTY INSURANCE COMPANY, INC., ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 13-2360
HONORABLE D. JASON MECHE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**PHYLLIS M. KEATY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Marc T. Amy, Shannon J. Gremillion, Phyllis M. Keaty, and Candyce G. Perret, Judges.


**Amy, J., dissents and assigns reasons.**
**Gremillion, J., dissents for the reasons provided by Judge Amy.**


**AFFIRMED.  WRIT DENIED.**

**Michael D. Peytavin**
**John J. Danna, Jr.**
**William D. Dunn, Jr.**
**Gaudry, Ranson, Higgins & Gremillion, L.L.C.**
**401 Whitney Avenue, Suite 500**
**Gretna, Louisiana   70056**
**(504) 362-2466**
**Counsel for Defendant/Appellant:**
        **Zurich American Insurance Company**

**Miles A. Matt**
**Law Offices of Matt & Allen, L.L.C.**
**Post Office Box 4405**
**Lafayette, Louisiana  70502-4405**
**(337) 237-1000**
**Counsel for Plaintiff/Appellee:**
        **Joey Higginbotham**

**James M. Dill**
**The Dill Firm, APLC**
**Post Office Box 3324**
**Lafayette, Louisiana  70502-3324**
**(337) 261-1408**
**Counsel for Defendant/Appellant:**
        **Zurich American Insurance Company**

**Jennifer L. Simmons**
**Melchiode, Marks, King, LLC**
**639 Loyola Avenue, Suite 2550**
**New Orleans, Louisiana  70113**
**(504) 336-2880**
**Counsel for Intervenor/Appellee:**
        **Zurich American Insurance Company**

**Bradley J. Gadel**
**728 Jackson Street**
**Alexandria, Louisiana  71301**
**(318) 448-4406**
**Counsel for Intervenor/Appellee:**
        **Louisiana Insurance Guaranty Association**

**Donald Mayeux**
**Post Office Drawer 1460**
**Eunice, Louisiana  70535**
**(337) 457-9610**
**Counsel for Defendant/Appellee:**
        **Eddie J. Edmond**

**KEATY, Judge.**

An employee of the insured transportation company was injured in an automobile accident and sought recovery under the uninsured/underinsured (UM) provisions of his employer's trucker's liability policy. The insurer denied the plaintiff's claims, alleging that its insured waived UM coverage. The plaintiff challenged the validity of the UM waiver. The issue of UM coverage was presented to the trial court in cross-motions for summary judgment. The trial court granted the motion for partial summary judgment filed by the plaintiff and denied the motion for summary judgment filed by the insurer, finding that the policy provided UM coverage for the plaintiff's damages. The insurer filed an appeal and an application for supervisory writs challenging that judgment, which this court consolidated. For the following reasons, we affirm.

### Factual and Procedural History[1]

The plaintiff, Joey Higginbotham, was employed as a truck driver for Dupre Logistics, LLC (Dupre), when he was involved in a January 25, 2013 on-the-job automobile accident. He filed the underlying action for damages against the other driver involved in the accident, as well as his insurer, USAgencies Casualty Insurance Company. Later, the plaintiff filed a supplemental and amending petition naming Dupre's trucker's liability insurer, Zurich American Insurance Company (Zurich) as a defendant, seeking UM coverage under the policy it issued to Dupre. In its answer to the amended petition, Zurich admitted that it issued trucker's liability insurance to Dupre, but denied coverage for the plaintiff's claims based upon its assertion that Dupre waived UM coverage.

---

[1] While there are some workers' compensation aspects to this case, none are relevant to this appeal and writ.

Zurich filed a motion for summary judgment seeking dismissal of the plaintiff's claims against it, alleging that Dupre waived UM coverage in the initial policy Zurich issued to it in October 2005, TRK 5916139-00, and in the renewal policies issued to it over the next six years. Thereafter, the plaintiff moved for partial summary judgment seeking a declaration that the Zurich policy afforded UM coverage for his claims because the purported waiver did not comply with Louisiana law.

At the close of a contradictory hearing, the trial court issued a ruling from the bench denying Zurich's motion for summary judgment and granting the motion for partial summary judgment filed by the plaintiff. In oral reasons for ruling given at that time, the trial court concluded that the 2005 UM form and the subsequent UM forms executed in conjunction with the renewal policies issued by Zurich[2] were not valid for the reasons stated by this court in *Johnson v. Government Employees Insurance Co.*, 07-1391 (La.App. 3 Cir. 4/9/08), 980 So.2d 870, *writ denied*, 08-1031 (La. 8/29/08), 989 So.2d 105. The trial court explained that Zurich's insertion of "N/A" on the blanks of the UM forms "depriv[ed] its insureds of the choice, making the rejection forms not clear and unmistakable from the face of the rejection form limiting the choices available to the insured." The trial court later signed a "Final Judgment on Partial Summary Judgment" in conformity with its oral reasons for judgment. Therein, the trial court decreed that:

> [T]he policy of insurance issued by Zurich American Insurance Company to Dupre Logistics, LLC, policy number TRK 5916139-07, for the period of October 1, 2012 to October 1, 2013 provides uninsured/underinsured motorist coverage for damages sustained by

---

[2] Zurich does not rely on the UM form dated August 13, 2012, which was signed in conjunction with the policy in effect at the time of the January 25, 2013 accident. That UM form is dated and contains the signature of Dupre's Administrative Manager, Robert Coussan. Zurich does not contest, however, that Mr. Coussan did not initial the rejection selection at the time of its completion.

Joey Higginbotham arising out of the accident occurring on or about 25 January, 2013 giving rise to claims in the captioned and numbered cause.

The trial court designated the judgment as final and appealable pursuant to La.Code Civ.P. art. 1915.

Zurich now appeals, asserting that:

A. The Court Erred in Granting Plaintiff Summary Judgment And Declaring UM Coverage Exists When Dupre Executed Six UM Waivers And Verified It Did Not Want UM Coverage.

B. The Court Erred In Holding An Incomplete Waiver For A Seventh Renewal Voids Six Prior UM Waivers As Limits Did Not Change[.]

C. If The Judgment Is Improperly Designated A "Final Judgment" Under Art. 1915 It Is Reviewable By Supervisory Writ.

Zurich makes similar arguments in the corresponding writ application it filed regarding the denial of its motion for summary judgment.

**Discussion**

"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action . . . . The procedure is favored and shall be construed to accomplish these ends." La.Code Civ.P. art. 966(A)(2).[3] "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential

---

[3] We note that while the dates when the opposing motions for summary judgment were filed requires reference to successive versions of La.Code Civ.P. art. 966, the result of this appeal remains the same regardless of which version is applicable.

3

elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

La.Code Civ.P. art. 966(D)(1). "A dispute as to the issue of whether, as a matter of law, the language of an insurance policy provides coverage to a party, can be properly resolved within the framework of a motion for summary judgment." *Pridgen v. Jones*, 556 So.2d 945, 949 (La.App. 3 Cir. 1990). "Appellate courts review summary judgments de novo under the same criteria that govern a district court's consideration of whether summary judgment is appropriate." *Larson v. XYZ Ins. Co.*, 16-745, p. 6 (La. 5/3/17), 226 So.3d 412, 416.

While all automobile liability policies delivered or issued for delivery in Louisiana include UM coverage, *see* La.R.S. 22:1295(1)(a), that statute provides the following caveat:

> (i) [H]owever, the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item (1)(a)(ii) of this Section. . . .

> (ii) Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. . . .

The supreme court has explained that the object of UM coverage is to provide full recovery for automobile accident victims who sustain damages by a

4

tortfeasor who lacks adequate liability insurance. *Duncan v. U.S.A.A. Ins. Co.*, 06-363 (La. 11/29/06), 950 So.2d 544. It described the public policy underlying the UM coverage provision as a strong one and explained that "[t]he liberal construction given the UM statute requires the statutory exceptions to coverage be interpreted strictly." *Id*. at 547. The *Duncan* court noted that "the insurer bears the burden of proving any insured named in the policy rejected in writing the coverage equal to bodily injury coverage or selected lower limits," and that "[a]ny **exclusion from coverage** in an insurance policy **must be clear and unmistakable**." *Id.* (Emphasis added).

Reviewing the UM form created by the Louisiana Commissioner of Insurance for an insured's waiver of UM coverage, the supreme court explained that the following six tasks must occur:

> (1) initialing the selection or rejection of coverage **chosen**; (2) if limits lower than the policy limits are chosen . . . , then filling in the amount of coverage selected for each person and each accident; (3) printing the name of the named insured or legal representative; (4) signing the name of the named insured or legal representative; (5) filling in the policy number; and (6) filling in the date.

*Duncan*, 950 So.2d at 551 (emphasis added).

In *Johnson v. Government Employees Insurance Co.*, 05-476 (La.App. 3 Cir. 11/2/05), 916 So.2d 451, an insured, who was injured in an automobile accident, settled his claims against the other driver and her insurer, leaving for resolution his claim for UM coverage against his own automobile liability insurer, American Century Casualty Company (ACCC). The trial court granted summary judgment in favor of the plaintiff, and on ACCC's appeal to this court, we reversed and remanded, finding that genuine issues of material fact remained regarding whether the plaintiff validly rejected UM coverage. Following a trial on the merits, the trial

court ruled in favor of the plaintiff based on its finding that the plaintiff "did not make a meaningful rejection of UM Coverage." *Johnson*, 980 So.2d at 872. ACCC again appealed, and upon review of that judgment, this court noted:

> *Duncan*[, 950 So.2d 544,] and *Gray* [*v. American National Property & Casualty Co.*, 07-1670 (La. 2/26/08), 977 So.2d 839,] mandate that the **form must be properly completed prior to any discussion regarding whether the insured knowingly and consciously waived UM coverage**. The formalities mandated by statute and jurisprudence are not merely procedural exercises or ''rote'' tasks, but rather are substantive requirements which must be properly completed in order to effectuate a valid waiver of UM coverage. *Gray* at p. 9, 977 So.2d at 845. In *Gray*, the supreme court stated:
>
> > [T]his court distinguished failures to comply with the UM selection form requirement established by the Insurance Commissioner from other types of clerical errors in insurance contracts that might be subject to reform. The failure to comply with the requirements for confecting a valid UM selection form are not subject to reformation.
>
> *Gray* at p. 15, 977 So.2d at 849.

*Id.* at 875-76 (emphasis added). Upon application of the law to the evidence presented, this court stated:

> [W]e find the **insurer failed to comply with the first formality** which requires that the **insured *chose* between types of UM coverage** and outright rejection of all UM coverage. Compliance with this formality ensures that the insured by his own volition read and reviewed each available selection and consciously and knowingly made a decision by the placement of his initials on the blank reflecting his choice. Mr. Johnson was not given any choice or option because the form had only one available selection when it was presented to him. The only blank which was left open, which Mr. Johnson was asked to initial, was the selection which stated: "I do not want UMBI Coverage." All other blanks for the selection of UM coverage were pre-filled and marked "N/A" by Ms. Bass prior to the presentation of the form to Mr. Johnson. He initialed the only blank left open and signed the form. . . . The "N/A" designation was typed into the blanks which proves the blanks were filled in ahead of time and printed out in anticipation of Mr. Johnson's arrival shortly after closing. There is not a scintilla of evidence to suggest the insured had access to the form before it was presented to him or otherwise placed the computer

6

generated "N/A" in the blank spaces before the form was signed. This evidence supports Mr. Johnson's testimony that he arrived at the agency with his check and was handed a pre-printed form to sign which left him with no option except to reject UM coverage. He also testified there was no discussion between him and Ms. Bass regarding his selection. He did testify, which testimony was not refuted, that he told Ms. Bass over the telephone he wanted "full coverage." We have examined the evidence presented and find there is nothing to indicate Mr. Johnson made a conscious choice among several options. While in *Gray* a post-filled form was found defective, we find in this case, **a form which is pre-filled by the agent leaving the insured with no choice but to reject UM coverage is equally defective**.

*Id.* at 876 (emphasis added). That being the case, this court "affirm[ed] the decision of the trial court finding the insurer failed to establish a waiver of UM coverage." *Id.*

Prior to considering the parties' arguments, we note that although both parties reference the UM forms completed in relation to the renewals, the parties' arguments chiefly pertain to the foundational consideration of the waiver completed at the time of the issuance of the original policy in 2005 and that form was focused on by the trial court. We, too, consider this the relevant point of inquiry as La.R.S. 22:1295(1)(a)(ii) provides, in part:

> The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates.

Accordingly, we turn to consideration of that original UM form pretermitting consideration of the parties' arguments regarding the relevance and validity of the subsequent UM forms.

### Does the Zurich Policy Provide UM Coverage?

In support of its argument that its policy did not provide UM coverage for the plaintiff's accident, Zurich attached to its motion for summary judgment the

affidavits of its Underwriting Manager, Jeffrey Benzin, and Dupre's Administrative Manager, Mr. Coussan.[4] In his affidavit, Mr. Coussan stated that, as the person who procured the trucker's liability policies for Dupre, he consistently told the insurance brokers/agents whom he did business with that Dupre did not want to pay for UM coverage for the trucks it owned and operated. Mr. Coussan confirmed that when he procured the initial policy at issue in this case, Dupre was aware that it "had the option of selecting UMBI[5] insurance coverage at the same level as the liability limits or at a lower level or at a minimum limit or rejecting UMBI insurance coverage totally[.]" He explained that after he told the Zurich representative that Dupre did not want UM coverage, he was given "Louisiana UMBI Coverage Forms with the 'N/A' and/or 'Not Available' inserted from the insurer."[6] With regard to each form, Mr. Coussan said that he initialed the option rejecting UM coverage.[7] In his affidavit, Mr. Benzin explained that he prepared UM forms covering the times applicable to this case to reflect Dupre's wish to not have UM coverage by entering "N/A" in the blanks next to the options that allowed for selection of some type of UM coverage. Moreover, pointing to the first circuit's decision in *Hughes v. Zurich American Insurance Co.*, 13-2167

---

[4] Zurich filed a Motion to Supplement and/or Amend its motion for summary judgment in which it attached the 1442 deposition transcripts of Dupre and of Arthur J. Gallagher & Company, Dupre's insurance broker, as well as copies of discovery Zurich sent to the plaintiff and his answers thereto. Because we hold that the intent of the parties is irrelevant to resolution of this matter, such evidence need not be addressed herein.

[5] In his affidavit, Mr. Coussan abbreviated "Uninsured/Underinsured Motorist Bodily Injury to "UMBI."

[6] Exhibit A to Mr. Coussan's affidavit was the initial UM form which bore policy number TRK 5916139-00 with a policy period of October 1, 2005 to October 1, 2006. Exhibits B, C, D, E, F, and G were the successive renewal policies that covered the time periods applicable to this case.

[7] In the policies, that option provided, "I do not want UMBI Coverage. I understand that I will not be compensated through UMBI coverage for losses arising from an accident caused by an uninsured/underinsured motorist."

(La.App. 1 Cir. 8/20/14), 153 So.3d 477, *writ denied*, 14-2220 (La. 1/9/15), 157 So.3d 1107, Zurich asserted in its motion for summary judgment that "[a] published opinion in an earlier case confirms [that] Dupre's employees do not have UM coverage under the Zurich American trucker's policy."

In opposition to Zurich's motion and support of its motion for partial summary judgment, the plaintiff asserted that the initial UM form and all of the forms signed by Dupre in the renewal policies covering the time periods applicable to this case are facially defective because of this court's holding in *Johnson*, 980 So.2d 870, which he asserts is directly on point. The plaintiff submitted that

> [T]he mental or express intent or desire of Dupre to select or reject coverage, of Gallagher to facilitate UM coverage, and of Zurich to provide UM coverage, is of absolutely no relevance, no materiality and can not be considered by this Court until and unless Zurich shows by "clear and unmistakable" evidence that the UM form of such policy is valid. Then, and only then, can Zurich avail itself to the "rebuttable presumption" afforded by La.R.S. 22:1295.

In its oral reasons for ruling, the trial court in this matter concluded that the 2005 form was invalid based on this court's holding in *Johnson*, 980 So.2d 870. Although it acknowledged the first circuit cases relied upon by Zurich,[8] the trial court remarked, "With all due respect to my brethren on the First Circuit, I feel that the Third Circuit has the proper analysis and that the First Circuit is skipping the formalities of form required on these UM waivers." The trial court then quoted the *Duncan* court's pronouncement that "[t]he expression of a desire not to have UM coverage, however clear, does not necessarily constitute a valid rejection if the expression of rejection does not meet the formal requirements of law." *See*

---

[8] *See Hughes*, 153 So.3d 477; *Lee v. Zurich Am. Ins. Co.*, 13-875 (La.App. 1 Cir. 12/21/11) (unpublished opinion); *Walker v. Walker*, 10-1865 (La.App. 1 Cir. 5/6/11) (unpublished opinion).

*Duncan*, 950 So.2d at 553 (quoting *Cohn v. State Farm Mut. Auto. Ins. Co.*, 03-2820 (La.App. 1 Cir. 2/11/15), 895 So.2d 600, *writ denied*, 05-1000 (La. 6/17/05), 904 So.2d 705). In doing so, the trial court remarked that it found it interesting that the supreme court "quoted a First Circuit case for [the foregoing] proposition." Thereafter, the trial court stated:

> Again, I can't speculate or read the minds of those judges that rendered those decisions in the First Circuit. But I believe that they are not properly addressing the significance of the insertion of the letters "N/A" into the blanks. Rather, they are immediately going to the supporting documents, affidavits, depositions, et cetera, and discerning the parties' intent to then explain the "N/A" rather than following the clear mandates of *Gray* and *Duncan* and cases like *Johnson* that say, "Don't look past the form, look at the form first." On the form, the very first requirement -- the first of the six (6) that were given to us by *Duncan* and *Gray* is that number one, the insured must initial the selection or rejection chosen, chosen, to indicate that the decision was made by the insured. As I said earlier, I feel that the approach or the analysis by the Third Circuit was correct.

After having completed a de novo review of the parties' cross-motions for summary judgment, we are convinced that the plaintiff met his burden of proving entitlement to partial summary judgment in his favor. The most telling evidence that supports our finding is the following pre-printed language on the original UM form, part of which we bold for emphasis: "(Economic-only UMBI Coverage **may not be available** from your insurance company. In this case, your company will have marked options 3 and 4 below as "**Not Available**.")." Thereafter, "N/A" was typed on the four blanks that include some type of UM coverage. Thus, it is preposterous for Zurich to suggest that the pre-printed UM form that it presented to Dupre made Dupre aware of coverage options that the form said were not available. Moreover, as the plaintiff correctly points out, the 2005 UM form is facially invalid, and Dupre's intent to waive UM coverage is irrelevant and cannot cure any defect in that form. Zurich's attempts to distinguish this matter from

*Johnson,* 980 So.2d 870, are unpersuasive. The intent of the parties is quite simply irrelevant where a UM form does not meet the requirements of Louisiana law, which the supreme court laid out in *Duncan* and which this court correctly applied in *Johnson.* Accordingly, we conclude that the trial court did not err in denying Zurich's motion for summary judgment, in granting the plaintiff's motion for partial summary judgment, and in holding that the trucker's liability policy that Zurich issued to Dupre provides UM coverage for the damages suffered by the plaintiff in the January 25, 2013 accident. Thus, Zurich's first assignment of error lacks merit, and we need not discuss its remaining assigned errors or the errors asserted in its writ application as they are moot.

## DECREE

For the foregoing reasons, the trial court's judgment is affirmed in its entirety. Costs of this proceeding are assessed to the defendant-appellant.

**AFFIRMED. WRIT DENIED.**

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

17-491

JOEY HIGGINBOTHAM

VERSUS

USAGENCIES CASUALTY INSURANCE COMPANY, INC., ET AL.

CONSOLIDATED WITH

17-497

JOEY HIGGINBOTHAM

VERSUS

USAGENCIES CASUALTY INSURANCE COMPANY, INC., ET AL.


AMY, J., dissenting.

In my opinion, the trial court erred in basing its ruling on *Johnson v. Gov't Emps. Ins. Co.*, 07-1391 (La.App. 3 Cir. 4/9/08), 980 So.2d 870, *writ denied*, 08-1031 (La. 8/29/08), 989 So.2d 105.

First, and although not addressed by either the trial court or the parties, I note that *Johnson*, 980 So.2d 870, was presented through a lead opinion, with two members of the three-judge panel concurring in the result. It seems to me that the trial court should have factored that into its consideration of applicability to this case. *See Chaney v. Travelers Ins. Co.*, 259 La. 1, pp. 10-11, 249 So.2d 181, 184 (1971) (wherein the supreme court concluded that the first circuit court of appeal had erroneously considered itself bound by a prior supreme court decision rendered by a plurality and explained, instead, that: "There is, in fact, no majority opinion by this Court … on the reasons for judgment, only on the result reached. One justice concurred in the result, meaning he did not subscribe to the language or rationale of the opinion, only the result, while three other members of the court dissented from that portion of the opinion [addressing an issue under review.]). *See also Williams v. The Library*, 12-0220, p. 5 (La.App. 1 Cir. 11/2/12), 111

So.3d 356, 360 (wherein the first circuit recognized that a supreme court plurality opinion was "of limited precedential value."); *Citizen Comm. for Better Law Enforcement v. City of Lafayette*, 95-1630, p. 8 (La.App. 3 Cir. 11/20/96), 685 So.2d 289, 293 (wherein a panel of this court found that a plurality opinion of the supreme court was "of little value as precedent and should properly be limited to the facts of that case only"), *writ denied*, 96-3087 (La. 2/7/97), 688 So.2d 507. In fact, the fourth circuit has considered the "differing reasons" offered by the panel members in *Johnson*, 980 So.2d 870, in its consideration of the applicability of that case to the matter before it. *See Rapalo-Alfaro v. Lee*, 15-0209, p. 18 (La.App. 4 Cir. 8/12/15), 173 So.3d 1174, 1184.

Additionally, I find this matter factually distinguishable from *Johnson*, 980 So.2d 870. Significantly, the plaintiff in *Johnson* testified at trial that he advised his insurance agent that "he wanted 'full coverage' on his vehicle." *Id*. at 872. In turn, the agent explained that, although she did not recall the specific conversation, such a statement "would have meant to her the inclusion of insured motorist coverage." *Id.* at 872-73. Yet, when the plaintiff arrived at the insurance agency, the agent presented him with a UM form described as follows:

> The form contained a list of five options. Each option was preceded by a blank space for selecting the type of uninsured motorist coverage to be purchased. Of the five options, the only blank which was left open, which [the insured] was asked to initial, was the option which stated: "I do not want the UMBI Coverage." All other blanks for the selection of UM coverage were pre-filled and marked "N/A" by [the agent] prior to presentation of the form to [the insured].

*Id.* at 873. The lead opinion subsequently explained that there was no evidence suggesting that the insured had access to the form before it was presented to him or that he otherwise placed the computer generated "N/A" on the form. *Id*. Pointedly, the insured "also testified there was no discussion between him and [the agent] regarding his selection." *Id*. at 876. Instead, his unrefuted testimony was "that he told [the agent] over the telephone he wanted 'full coverage.'" *Id*. Thus,

2

the lead opinion indicated that, based upon the evidence presented, "there [was] nothing to indicate [the insured] made a conscious choice among several options." *Id.*

In this case, affidavit and deposition testimony provide the background details regarding Dupré's communication with Zurich. For example, Mr. Coussan explained in his affidavit that he was "aware that Dupré had the choice and option to select UMBI insurance coverage at the same limits as liability coverage, at lesser limits, at minimum limits, or to reject UMBI insurance coverage altogether." He explained that he had "discussed and communicated with the agents and brokers for Dupré since he became primarily responsible for obtaining the policies of insurance" and that "[h]e ha[d] consistently and repeatedly communicated to the agents and brokers that Dupré does not want UMBI insurance coverage in Louisiana." Mr. Coussan thereafter specifically stated that: "In response to his communications to the agents and brokers that Dupré does not want UMBI insurance coverage in Louisiana he received the attached Louisiana UMBI Coverage Forms with the "N/A" and/or "Not Available" inserted from the insurer …." Thus, contrary to the situation in *Johnson*, 980 So.2d 870, in which the plaintiff explained that he wanted "full coverage" and that the pre-filled form was presented to him, the insured in this case communicated its preference for no UM coverage, the insurer responded to that communication, and the insured, in turn, ultimately completed the form to decline coverage.

Furthermore, the plaintiff argues broadly as to the holding of *Johnson*, 980 So.2d 870, suggesting that the form alone, and not the circumstances of the insurer's placement of "N/A" onto the form, must be considered. The plaintiff suggests that such an inquiry would be one into the party's intent and would thus be contrary to the supreme court's statement that an "insurer cannot rely on the insured's intent to waive UM coverage to cure a defect in the form of the waiver."

*Duncan v. U.S.A.A. Ins. Co.*, 06-363, p. 14 (La. 11/29/06), 950 So.2d 944, 553. By this argument, the plaintiff collapses the concept of intent to waive UM coverage with the circumstances underlying the execution of such a waiver, i.e., the impetus and timing behind the placement of "N/A" onto the form's selections. Importantly, in *Johnson*, 980 So.2d at 876, the plaintiff "testified there was no discussion between him and [the agent] regarding his selection" other than his explanation over the telephone that "he wanted 'full coverage'."

Thus, in my opinion, the facts of the present case differ, and, in fact, evidence indicates that the insurer's inscription on the form came at the direction of the insured. Thereafter, the insured, via Mr. Coussan, initialed the rejection clause. Given that sequence of events, I find no merit in the plaintiff's contention that Zurich's placement of "N/A" onto certain selections of the initial, 2005 form indicates that it did not give Dupré a choice other than to select the rejection clause.

Instead, the UM form of October 1, 2005, completed in conjunction with the issuance of the original policy, indicates that the tasks described in *Duncan*, 950 So.2d 944, were completed. As discussed, Mr. Coussan initialed the rejection of coverage. Additionally, the form includes the printed name of the insured and Mr. Coussan, as "authorized Representative of Dupré Transport LLC[,]" signed the form. The subject policy number—TRK 5916139-00—is also included as is the date of "10-1-05". *See id.*

Thus, under the facts of this case, I find that the subject form indicates an adequate waiver of UM coverage and that, in turn, the trial court erred in entering summary judgment in favor of the plaintiff and rejecting the entry of summary judgment in favor of Zurich. I find that a reversal of each of those rulings is required. For these reasons, I respectfully dissent.

4