AMY, J., dissenting.
In my opinion, the trial court erred in basing its ruling on Johnson v. Gov't Emps. Ins. Co. , 07-1391 (La.App. 3 Cir. 4/9/08), 980 So.2d 870, writ denied , 08-1031 (La. 8/29/08), 989 So.2d 105.
First, and although not addressed by either the trial court or the parties, I note that Johnson , 980 So.2d 870, was presented through a lead opinion, with two members of the three-judge panel concurring in the result. It seems to me that the trial court should have factored that into its consideration of applicability to this case. See Chaney v. Travelers Ins. Co. , 259 La. 1, pp. 10-11, 249 So.2d 181, 184 (1971) (wherein the supreme court concluded that the first circuit court of appeal had erroneously considered itself bound by a prior supreme court decision rendered by a plurality and explained, instead, that: "There is, in fact, no majority opinion by this Court ... on the reasons for judgment, only on the result reached. One justice concurred in the result, meaning he did not subscribe to the language or rationale of the opinion, only the result, while three other members of the court dissented from that portion of the opinion [addressing an issue under review.] ). See also Williams v. The Library , 12-0220, p. 5 (La.App. 1 Cir. 11/2/12), 111 So.3d 356, 360 (wherein the first circuit recognized that a supreme court plurality opinion was "of limited precedential value."); Citizen Comm. for Better Law Enforcement v. City of Lafayette , 95-1630, p. 8 (La.App. 3 Cir. 11/20/96), 685 So.2d 289, 293 (wherein a panel of this court found that a plurality opinion of the supreme court was "of little value as precedent and should properly be limited to the facts of that case only"), writ denied , 96-3087 (La. 2/7/97), 688 So.2d 507. In fact, the fourth circuit has considered the "differing reasons" offered by the panel members in Johnson , 980 So.2d 870, in its consideration of the applicability of that case to the matter before it. See Rapalo-Alfaro v. Lee , 15-0209, p. 18 (La.App. 4 Cir. 8/12/15), 173 So.3d 1174, 1184.
Additionally, I find this matter factually distinguishable from Johnson , 980 So.2d 870. Significantly, the plaintiff in Johnson testified at trial that he advised his insurance agent that "he wanted 'full coverage' on his vehicle." Id. at 872. In turn, the agent explained that, although she did not recall the specific conversation, such a statement "would have meant to her the inclusion of insured motorist coverage." Id. at 872-73. Yet, when the plaintiff arrived at the insurance agency, the agent presented him with a UM form described as follows:
The form contained a list of five options. Each option was preceded by a blank space for selecting the type of uninsured motorist coverage to be purchased. Of the five options, the only blank which was left open, which [the insured] was asked to initial, was the option which stated: "I do not want the UMBI Coverage." All other blanks for the selection of UM coverage were pre-filled and marked "N/A" by [the agent] prior to presentation of the form to [the insured].
Id. at 873. The lead opinion subsequently explained that there was no evidence suggesting that the insured had access to the form before it was presented to him or that he otherwise placed the computer generated "N/A" on the form. Id. Pointedly, the insured "also testified there was no *925 discussion between him and [the agent] regarding his selection." Id. at 876. Instead, his unrefuted testimony was "that he told [the agent] over the telephone he wanted 'full coverage.' " Id. Thus, the lead opinion indicated that, based upon the evidence presented, "there [was] nothing to indicate [the insured] made a conscious choice among several options." Id.
In this case, affidavit and deposition testimony provide the background details regarding Dupré's communication with Zurich. For example, Mr. Coussan explained in his affidavit that he was "aware that Dupré had the choice and option to select UMBI insurance coverage at the same limits as liability coverage, at lesser limits, at minimum limits, or to reject UMBI insurance coverage altogether." He explained that he had "discussed and communicated with the agents and brokers for Dupré since he became primarily responsible for obtaining the policies of insurance" and that "[h]e ha[d] consistently and repeatedly communicated to the agents and brokers that Dupré does not want UMBI insurance coverage in Louisiana." Mr. Coussan thereafter specifically stated that: "In response to his communications to the agents and brokers that Dupré does not want UMBI insurance coverage in Louisiana he received the attached Louisiana UMBI Coverage Forms with the "N/A" and/or "Not Available" inserted from the insurer ...." Thus, contrary to the situation in Johnson , 980 So.2d 870, in which the plaintiff explained that he wanted "full coverage" and that the pre-filled form was presented to him, the insured in this case communicated its preference for no UM coverage, the insurer responded to that communication, and the insured, in turn, ultimately completed the form to decline coverage.
Furthermore, the plaintiff argues broadly as to the holding of Johnson , 980 So.2d 870, suggesting that the form alone, and not the circumstances of the insurer's placement of "N/A" onto the form, must be considered. The plaintiff suggests that such an inquiry would be one into the party's intent and would thus be contrary to the supreme court's statement that an "insurer cannot rely on the insured's intent to waive UM coverage to cure a defect in the form of the waiver." Duncan v. U.S.A.A. Ins. Co. , 06-363, p. 14 (La. 11/29/06), 950 So.2d 544, 553. By this argument, the plaintiff collapses the concept of intent to waive UM coverage with the circumstances underlying the execution of such a waiver, i.e., the impetus and timing behind the placement of "N/A" onto the form's selections. Importantly, in Johnson , 980 So.2d at 876, the plaintiff "testified there was no discussion between him and [the agent] regarding his selection" other than his explanation over the telephone that "he wanted 'full coverage'."
Thus, in my opinion, the facts of the present case differ, and, in fact, evidence indicates that the insurer's inscription on the form came at the direction of the insured. Thereafter, the insured, via Mr. Coussan, initialed the rejection clause. Given that sequence of events, I find no merit in the plaintiff's contention that Zurich's placement of "N/A" onto certain selections of the initial, 2005 form indicates that it did not give Dupré a choice other than to select the rejection clause.
Instead, the UM form of October 1, 2005, completed in conjunction with the issuance of the original policy, indicates that the tasks described in Duncan , 950 So.2d 544, were completed. As discussed, Mr. Coussan initialed the rejection of coverage. Additionally, the form includes the printed name of the insured and Mr. Coussan, as "authorized Representative of Dupré Transport LLC[,]" signed the form. The subject policy number-TRK
*926 5916139-00-is also included as is the date of "10-1-05". See id.
Thus, under the facts of this case, I find that the subject form indicates an adequate waiver of UM coverage and that, in turn, the trial court erred in entering summary judgment in favor of the plaintiff and rejecting the entry of summary judgment in favor of Zurich. I find that a reversal of each of those rulings is required. For these reasons, I respectfully dissent.