PETTIGREW, J.
|2The salient issue in this appeal is whether the trial court erred in finding that plaintiff Jose A. Garay-Lara’s selection to reject uninsured motorist coverage in his automobile insurance policy was valid, thus supporting the grant of summary judgment in favor of the defendant insurance company. After a thorough and de novo review of the record, we find no error and affirm.
BACKGROUND FACTS AND PROCEDURAL HISTORY
On April 26, 2011, plaintiff, Jose A. Ga-ray-Lara, was operating a 2001 Toyota Tundra truck, travelling westbound on La. Hwy. 427 (aka Perkins Road), in Ascension Parish. His vehicle was struck by a 2008 Volkswagen Beetle, owned by Shelia White Gautreau, and operated by Tammy Denise Dean. It is alleged that the collision caused property damage to the Tundra truck, and personal injuries to Mr. Garay-Lara and his passengers Juan C. Cubas-Zaldiva and Marco Antonio Enamorado. Plaintiffs allege that Ms. Dean was at fault in causing the accident,[1] and Ms. Gautreau and Ms. Dean were uninsured and/or underinsured *424 for the collision and the resulting damages.[2]
On April 24, 2012, plaintiffs filed a petition for damages, naming as defendant Mr. Garay-Lara’s automobile liability insurer, Cornerstone National Insurance Company (Cornerstone), alleging it provided him with a policy that included uninsured motorist coverage at the time of the accident. Cornerstone filed a motion for summary judgment asserting that Mr. Garay-Lara completed a valid UM bodily injury rejection form, and consequently, the policy issued to him did not provide UM coverage for the damages sought. The initial summary judgment motion was denied by judgment dated July 30, 2012. However, Cornerstone subsequently filed a second motion for summary judgment, on the same basis, together with competent supporting evidence. By judgment dated March 6, 2013, the motion for summary judgment was granted and plaintiffs’ claims were ^dismissed with prejudice. This appeal by the plaintiffs followed, asserting the trial court erred in granting summary judgment because the evidence presented established that Mr. Garay-Lara’s selection to decline UM coverage in the policy issued to him was not “meaningful” and therefore, invalid.
ARGUMENTS AND EVIDENCE PRESENTED IN SUPPORT OF AND IN OPPOSITION TO SUMMARY JUDGMENT
Cornerstone submitted into evidence the automobile liability policy issued to Mr. Garay-Lara effective on the date of the accident. This application reflects that in the UM coverage section, the initials of Mr. Gai’ay-Lara, “JAGL,” appear on the line evidencing an intent to reject such coverage. (The lines preceding the rejection, applicable to selecting UM coverage in varying amounts, are typed in “NA.”)
Cornerstone also submitted a sworn affidavit by the operational manager of Classic Insurance Agency (Classic), Jessica Murillo, attesting that Mr. Garay-Lara had also been issued a prior Cornerstone insurance policy, in 2008, in which he also selected to reject UM coverage. Also (apparently, in response to Mr. Garay-Lara’s assertions that he is a Spanish-speaking Hispanic, and because of that fact, he does not speak, write, or read English fluently and did not fully understand the policy or what he was signing), Ms. Murillo’s affidavit attests that all agents and employees of Classic are bilingual, being fluent in both Spanish and English. She additionally attested that it is the policy of Classic to have all agents and employees speak to their clients in the language in which the client is most fluent. She further attested that it is Classic’s policy to discuss coverage with their clients prior to the client completing an insurance application; the agent, based on the client’s verbal selection, would then fill out the application and obtain the appropriate signatures from the client. She attested that Mr. Garay-Lara’s prior policy had lapsed for nonpayment, and when he came into the office to complete a restart application, Classic proceeded according to those long-standing policies. She further attested that Mr. Garay-Lara, again, declined UM coverage, and the application was completed and signed accordingly.
^Cornerstone also submitted into evidence Jessica Murillo’s deposition, which was consistent with the attestations made in the aforementioned affidavit. In addition, Ms. Murillo testified in her deposition *425 that the company is a “Hispanic” establishment and that 90 percent of their clientele are Hispanic and speak Spanish, so the agents and employees at Classic are speaking Spanish on a daily basis. She reiterated that it is standard protocol that all agents explain the policies and coverage available, including UM coverage in Spanish; they read the actual policies to their Hispanic clients in Spanish, and then fill out the applications with their clients’ verbal responses. (The deposition entered into evidence contains the discussion, with Spanish translation provided, that is customarily had with clients explaining the different types of coverage available, including UM coverage and the options for selection available to the clients, including the costs associated with the clients’ choices.) The deposition testimony also confirmed that once a client verbally makes his selections, the form is printed out, noting those selections, and presented to the client to initial according to his selections. In Mr, Garay-Lara’s case, once coverage was discussed and he verbally made his selection to reject UM coverage, the application form was printed out, noting the date (December 9, 2010) and “NA” for the UM coverage selections, with a blank for his initials, and another blank for his signature. The actual application submitted into evidence is consistent with the deposition testimony, reflecting Mr. Garay-Lara’s initials on the line rejecting UM coverage and his signature next to the printed date.[3]
In opposition to the motion for summary judgment, the plaintiffs submitted the sworn affidavit of Mr. Garay-Lara. In that affidavit, he attested that he is of Hispanic descent, that his first language is Spanish, and that he does not speak, read, or write English fluently. He also stated that all the documents presented to him for signing by the agent at the time he obtained his policy with Cornerstone were written in the English | ¿language. Additionally, he attested that he could not fully read or fully understand all the documents presented to him, and that he did not fully understand that he was waiving or rejecting UM coverage. Further, he attested that he does not fully understand the function of UM coverage, and that the detail of the documents he was signing were not explained to him in either Spanish or English, and that he did not fully understand the documents he was signing or the nature of those documents. He stated that he did not elect where to initial and/or sign the documents, but was directed by the agent where to do so. Notably, however, he did not deny the attestations made by the affidavit or the deposition testimony of Ms. Murillo to the effect that all communications with the agent at the time that he went to obtain the restart of his policy were in Spanish and that all agents read the actual policies to Hispanic clients in Spanish. Nor did he explain the reasons why he did not understand the nature or the contents of the documents he initialed and allowed to be signed. We also note that despite his assertions that he did not understand the nature or the contents of the documents he was signing, he did not assert that at any time prior to initialing or allowing his signature on the documents, that he asked any further questions or explained to anyone that he did not understand what he was signing. Additionally, we note that he did not refuse to *426 initial the documents and did not allege that he did so under any type of force or other duress. Finally, nowhere in Mr. Ga-ray-Lara’s affidavit does he state that he desired to purchase UM coverage and/or that he was denied or prohibited from making that choice in any way.
APPLICABLE LAW/ANALYSIS
In Duncan v. USAA Insurance Company, 2006-363 (La.11/29/06), 950 So.2d 544, 551, the Louisiana Supreme Court laid out the requirements necessary for a valid UM rejection form, involving six tasks:
(1) Initialing the selection or rejection of coverage chosen;
(2) If limits lower than the policy limits are chosen (available in options 2 and 4) then filling in the amount of coverage selected for each person and each accident;
(3) Printing the name of the name insured or legal representative;
(4) Signing the name of the named insured or legal representative;
fc(5) Filling in the policy number; and
(6) Filling in the date.
Our de novo review of the record before us reveals that the form completed by Mr. Garay-Lara satisfies all six of those necessary requirements. The form includes his initials rejecting UM coverage (which he does not deny doing); his signature (electronic, as required by Cornerstone) confirming that rejection; the date (December 9, 2010) the form and the rejection were completed; the Cornerstone policy number (CLA01502586); and the insurer’s designation, Cornerstone National Insurance Company. As such, the completed form creates a rebuttable presumption that the insured knowingly rejected coverage. See La. R.S. 22:1295.
Mr. Garay-Lara has not overcome that presumption. We reject his reliance on his first language being Spanish as a valid reason for his initialing and selection to reject coverage to be rendered invalid. The agent communicated with him in Spanish, and the evidence established that all the details of the available coverage were explained to him in his native language. Notwithstanding his assertions that he did not understand the document because it was written in English, the record is devoid of any evidence that Mr. Garay-Lara desired or intended to purchase UM coverage, and was unable to do so for any reason. Indeed, the record reveals that all prior policies obtained by him did not provide UM coverage because he had always rejected that coverage in the past. Moreover, even in opposition to the summary judgment motion herein, Mr. Garay-Lara does not ever assert that he desired UM coverage. The record also reveals that Mr. Garay-Lara, despite having ample opportunity to do so, did not ever state that he did not understand anything about the policy or the coverage available or that he did not understand what he was initialing on the form. Additionally, the deposition testimony and the affidavit submitted by the defendant reveals that the other blanks on the form were marked “NA” only after Mr. Garay-Lara indicated that he desired to reject UM coverage, rendering meritless his contention that he was unable to make a meaningful selection on the form because only one blank was left open. Finally, the jurisprudence does not |7support his contention that the fact that his name and the date were typed on the form in any way invalidated his selection thereon. See Harper v. Direct General Insurance Company, 2008-2874 (La.2/13/09), 2 So.3d 418, 420, holding that a typed name and date are insufficient to invalidate an otherwise valid rejection.
In this matter, the plaintiffs’ reliance on the fact that Mr. Garay-Lara’s primary *427 language is Spanish and because of that, he did not fully understand what he was doing is simply untenable, given that the agent communicated with him entirely in Spanish, obtained his choice and desire to reject UM coverage in Spanish, and then directed him on the form written in the English language, where his selection was located and his initials were required. At no time, during the Spanish conversation, did Mr. Garay-Lara indicate that he desired to purchase UM coverage, or did he state that he did not understand the explanation he was given regarding the availability of that coverage. All evidence indicates that he willingly and knowingly rejected UM coverage, and the application form on which he made that selection is valid in accordance with Saw. Moreover, as a matter of law, Mr. Garay-Lara is presumed to know and understand what he is signing or initialing. See Coleman v. Jim Walter Homes, Inc., 2008-1221 (La.3/17/09), 6 So.3d 179, 183.
CONCLUSION
For the foregoing reasons, there are no genuine issues of material fact. The rejection form initialed by and containing Mr. Garay-Lara’s signature is valid, and the trial court did not err in granting the defendant, Cornerstone’s, motion for summary judgment. Accordingly, that judgment is affirmed. Costs of this appeal are assessed to the plaintiffs/appellants.
AFFIRMED.

. It is alleged that Ms. Dean disregarded a stop sign on Magnolia Estate Drive and proceeded into the path of Mr. Garay-Lara’s truck on La. Hwy. 427, causing the vehicles to collide.

. For purposes of the summary judgment at issue herein, the defendant insurer denies, but does not dispute plaintiffs' allegations as to Ms. Dean's fault or the uninsured/underin-sured status of both Ms. Dean and Ms. Gau-treau.

. Ms. Murillo explained that Mr. Garay-Lara initialed the form, selecting to reject UM coverage, but the electronic signature in the computer system (from Mr. Garay-Lara's prior application) was used and transferred to his restart application as required by Cornerstone; however, it was placed on the new application in accordance with his verbal selection to reject UM coverage made at the time of the restart application.