RENEE JACKSON & ANTIONE COLEMAN

VERSUS

LIBERTY PERSONAL INSURANCE COMPANY

NO. 20-CA-13

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 772-251, DIVISION "P"
HONORABLE LEE V. FAULKNER, JR., JUDGE PRESIDING

July 02, 2020

**FREDERICKA HOMBERG WICKER**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and John J. Molaison, Jr.

**AFFIRMED AND REMANDED**

    **FHW**
    **SMC**
    **JJM**

COUNSEL FOR PLAINTIFF/APPELLANT,
RENEE JACKSON & ANTIONE COLEMAN
   William R. Mustian, III

COUNSEL FOR DEFENDANT/APPELLEE,
LIBERTY PERSONAL INSURANCE COMPANY
   H. Minor Pipes, III
   Stephen L. Miles

**WICKER, J.**

Plaintiffs, Renee Jackson and Antione Coleman, appeal from the trial court's ruling granting summary judgment in favor of defendant, Liberty Personal Insurance Company (hereinafter "Liberty"), finding that the UM coverage under the Liberty Personal Insurance Company Policy issued to Ms. Jackson is limited to Economic-Only UMBI coverage based upon an enforceable UMBI coverage selection form. For the following reasons, we affirm the judgment of the trial court and remand the matter for further proceedings.

Plaintiffs filed suit against Liberty, alleging personal injury and property damage as a result of an automobile accident. In their petition, they allege that Ms. Jackson was driving her 2011 Dodge Charger, with Antione Coleman as a passenger, when they were struck from behind by an unknown vehicle operated by an unknown driver. The unknown driver then fled the scene of the accident. At the time of the accident, Liberty was Ms. Jackson' automobile insurance provider, and provided coverage under the uninsured/underinsured bodily injury (UMBI) provision of the policy.

Liberty filed a motion for summary judgment, contending that Ms. Jackson had validly elected Economic-Only UMBI coverage, and that plaintiffs had been fully compensated for their economic-only damages resulting from the accident, and therefore it was entitled to summary judgment as a matter of law. Plaintiffs opposed the motion, alleging that the election of Economic-Only UMBI was invalid under Louisiana law. After a hearing, the trial court granted Liberty's motion for summary judgment, finding that "the UM coverage under the Liberty Personal Insurance Company Policy is limited to Economic-Only UMBI coverage based upon an enforceable UMBI coverage selection form."

Plaintiffs filed a motion for new trial, which was denied by the trial court. Plaintiffs then filed a motion for appeal, which was granted. This court found that

the judgment issued was a partial judgment that had not been certified as final for purposes of immediate appeal, and therefore was not an appealable judgment. La. C.C.P. art. 1915(B). We remanded the matter to the trial court for formulation of an appealable judgment that would reflect the trial court's intentions either to dismiss Plaintiffs' claims in their entirety or designate the partial judgment as final after a determination that there is no just reason for delay.

Pursuant to this Court's remand, the trial court reformed its prior judgment, ruling that summary judgment on the issue of UM coverage was granted, and that the matter was designated as a partial final judgment for purposes of immediate appeal. We now consider the merits of Plaintiff's appeal.

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). Appellate courts review the trial court's actions on motions for summary judgment *de novo*, applying the same criteria that governed the trial court. *Louisiana Power & Light*, 06-1181 (La. 3/9/07), 951 So.2d 1058, 1070. The reviewing court must determine if there are genuine issues of material fact, and whether the movant is entitled to judgment as a matter of law. *Id.* A decision as to the propriety of a grant of summary judgment must be made with reference to the substantive law applicable to the case. *Milton-Gustain v. Salvage Store, Inc.*, 19-42 (La. App. 5 Cir. 10/2/19), 280 So.3d 315, 319-20. The question of whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute that can be resolved properly within the framework of a motion for summary judgment. *Green v. State Farm Mut. Auto. Ins. Co.*, 2007-0094 (La. App. 1 Cir. 11/2/07), 978 So.2d 912, 915-16, *writ denied*, 08-0074 (La. 3/7/08), 977 So.2d 917. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy,

when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. *Id*. at 917.

The undisputed facts show that in December of 2015, Liberty issued a personal automobile liability policy to "Rener D. Jackson" and Larry Williby, policy number AOF-298-165768-70, effective for a policy period of December 23, 2015 to December 23, 2016. The policy was issued after Ms. Jackson submitted an on-line policy application, which she electronically signed on December 22, 2015, and which included her selection for UMBI coverage on the UMBI coverage form. In her answer to requests for admissions filed by Liberty, Ms. Jackson admitted that she electronically signed the UMBI coverage form on December 22, 2015.[1]

Liberty attached affidavits of its employees with knowledge of the application process to its motion for summary judgment. The affidavit of Nicholas Marrangoni, Liberty's Director-Complex Loss Issues, averred that Ms. Jackson originally obtained a quote for her policy through Liberty's website, after filling out a policy application. She chose to electronically complete her policy documents, including an e-signed terms and conditions consent form, and e-signed policy application and UMBI coverage selection form, on December 22, 2015. The policy application contained a typographical error in the spelling of Ms. Jackson's name, and that error was perpetuated on the policy issued. The spelling error was later corrected. According to Mr. Marrangoni, Ms. Jackson did not at any time contact Liberty to discuss the policy application or the terms of the policy that was issued.

---

[1] In *Durden v. Durden*, 14-1154 (La. App. 4 Cir. 4/29/15), 165 So.3d 1131, 1140, the court said:

> The Louisiana Code of Civil Procedure allows a party to serve upon another party a written request for the admission of the truth of any relevant matters of fact. La. C.C.P. art. 1466. The purpose of Article 1466 is "to relieve the parties of the expense of proving that which is not seriously disputed and to relieve the courts from taking needless time to hear such matters." (citing *Powell v. Department of Highways*, 383 So.2d 425, 430 (La. App. 4th Cir.1980).

The affidavit of Deanna Kinsman, who was employed by Liberty in the Documents Solution Department, and currently held the position of e-signature Product Owner, described the process for obtaining an automobile insurance policy on-line from Liberty, after an application had been completed. She averred that Liberty affords its customers the ability to purchase auto insurance off-site, either electronically or by mail or fax. If the applicant chooses to purchase insurance on-line, she must first set up an account. She is then advised that she has policy documents to review and sign. She must first click and e-sign on an e-sign consent page, agreeing to required terms and conditions to which the insured must assent before electronically viewing and signing her policy. The applicant then reviews the policy application generated by Liberty, pre-filled out with the customer's information, including the names of the insureds, the address, and the selected coverages that resulted in the insurance quote. When the customer views the policy application, a yellow marker instructing "click here to sign" indicates where the customer needs to click to apply her electronic signature and a date.

After the policy application is e-signed, the customer will also be presented with a UMBI coverage selection form if she has selected UMBI coverage different from her bodily injury limits of liability. When the customer views her UMBI coverage selection form, a yellow marker that instructs "click here to sign" appears next to the UMBI coverage selection reflected in her policy application and upon which the insurance premium quote was based. When the insured clicks on this marker next to her selection, her electronic signature and the date populate the blank on the form, reading "e-signed [date] by [name of insured]." The same yellow marker also appears on the line at the bottom of the form for the insured's signature which, when clicked, will again populate the line with the insured's electronic signature and date. Ms. Kinsman admitted if there was a typographical error in the spelling of the applicant's name on the application form, that error

would be perpetuated on the signature lines. Ms. Kinsman also stated that the applicant cannot change any of the information generated onto the policy from the application, because the change would affect the quoted price. In order to make any change at that point the insured must contact the insurance company to start the process anew.

Ms. Jackson's insurance policy renewed automatically and remained in effect until June 10, 2016. The misspelling of Ms. Jackson's name was corrected on April 4, 2016. When that change was made Ms. Jackson made no request for change of coverage.

In this appeal, plaintiffs present three assignments of error. First, they allege that the trial court erred in finding that Ms. Jackson made a knowing and voluntary selection of economic loss only uninsured motorist coverage because Liberty's uninsured motorist selection process did not allow her to make a meaningful choice of coverage options. Second, plaintiffs argue that Liberty's online process did not permit Ms. Jackson to initial her selection choice in violation of Supreme Court jurisprudence and the Commissioner of Insurance directive, and therefore the trial court erred in holding Ms. Jackson's electronic signature was an acceptable substitute for the required initials. Finally, Plaintiffs contend that the trial court erred in dismissing plaintiffs' claims for future medical expenses, lost wages, and loss of earning capacity.

Ms. Jackson first alleges that "Renee Jackson and Antione Coleman are entitled to full UM bodily injury coverage since the UM selection process did not permit Renee Jackson to make a meaningful selection of coverage options. Accordingly, the trial court erred in granting summary judgment holding that coverage was restricted to Economic-Only UM."

In Louisiana, the presence of uninsured motorist coverage in an insurance policy is determined by contractual provisions and by applicable statutes. *Rapalo-*

*Alfaro v. Lee*, 05-0209 (La. App. 4 Cir. 8/12/15), 173 So.3d 1174, 1177-79, *citing Green ex rel. Peterson v. Johnson*, 14-0292 (La. 10/15/14), 149 So.3d 766, 771. The object of uninsured motorist coverage is to provide full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance. *Rapalo-Alfaro*, *supra*; *Daigle v. Authement*, 96-1662 (La.4/8/97), 691 So.2d 1213, 1215. Pursuant to La. R.S. 22:1295,[2] all automobile liability insurance issued in Louisiana covering motor vehicles registered in Louisiana must provide uninsured motorist coverage equal to the liability provided for bodily injury, unless the insured validly rejects the coverage or selects lower limits. *Rapalo*, *supra*; *Magnon v. Collins*, 98-2822 (La.7/7/99), 739 So.2d 191, 195. Even if not expressly provided, uninsured motorist coverage will be read into the policy unless there has been a knowing and valid rejection or selection of lower limits. *Duncan v. U.S.A.A. Ins. Co.*, 06-0363 (La.11/29/06), 950 So.2d 544, 547.

The plaintiff bears the burden of proof in establishing insurance coverage. However, the insurer bears the burden of proving that a policy holder rejected UM coverage or selected lower limits of coverage. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. *Addison v. Affirmative Ins. Co.*, 17-0378 (La. App. 4 Cir. 11/15/17), 231 So.3d 753, 755-56, *writ denied*, 17-2061 (La. 2/2/18), 235 So.3d 1109; *Duncan v. U.S.A.A. Ins. Co.*, 06-363 (La. 11/29/06), 950 So. 2d 544, 552.

> When seeking recovery under a policy of insurance, it is the plaintiff's burden to establish every essential fact and that his claim is within the policy coverage. The Supreme Court, nevertheless, has held that the uninsured motorist statute should be liberally construed. Because uninsured motorist coverage is an "implied amendment of any automobile liability policy" issued in Louisiana, and will be read into the policy "even when not

---

[2] La. R.S 22:1295 was redesignated from R.S. 22:1406(D) by Acts 2003, No. 456, § 3. La. R.S. 22:1406(D) was renumbered from R.S. 22:680 by Acts 2008, No. 415, § 1, eff. Jan. 1, 2009.

expressly addressed," a plaintiff seeking to prove the presence of such coverage need only show that at the time of the loss he was insured by a policy of "automobile liability insurance delivered or issued for delivery in Louisiana and arising out of ownership, maintenance, or use of a motor vehicle registered in Louisiana and designed for use on public highways." La. R.S. 22:1295(1)(a)(1).

Conversely, the uninsured motorist statute's liberal construction requires that "the statutory exceptions to coverage be interpreted strictly." Any exclusion from coverage in an insurance policy must, therefore, be clear and unmistakable. "In accordance with this strict construction requirement, the insurer bears the burden of proving any insured named in the policy rejected in writing the coverage equal to bodily injury coverage or selected lower limits." As noted, a properly completed uninsured motorist coverage form where the signatory rejected coverage creates a rebuttable presumption that the insured knowingly rejected uninsured motorist coverage. The burden of proof then shifts to the insured to present evidence that the uninsured motorist selection form was in fact not properly completed. (Citations omitted).

*Rapolo*, *supra* at 1179, 1180.

As with any contract, when interpreting an insurance contract, the court must attempt to discern the common intent of the insured and insurer. *Reno v. Travelers Home and Marine Ins. Co.*, 02-2637 (La. App. 11/7/03), 867 So.2d 751. Analysis should begin with a review of the words in the insurance contract, and the contract must be enforced as written when the words are clear and explicit and lead to no absurd consequences. *Id.* The purpose of requiring the UMBI Coverage Form to be clear and unmistakable is to establish that the insured knowingly waived coverage under a particular policy. *Dixon v. Direct Gen. Ins. Co. of Louisiana*, 08-0907 (La. App. 1 Cir. 3/27/09), 12 So.3d 357, 362; *Villalobos v. USAgencies Cas. Ins. Co.*, 12-1491 (La. App. 4 Cir. 3/27/13), 112 So.3d 398, 402.

In *Tugwell v. State Farm Ins. Co.*, 609 So.2d 195, 197 (La. 1992), the Louisiana Supreme Court stated that "the insurer must place the insured in a position to make an informed rejection of UM coverage. *See also Gray v. Am. Nat. Prop. & Cas. Co.*, 07-1670 (La. 2/26/08), 977 So.2d 839, 848. The validity of a waiver or rejection of a UM coverage form is determined by the law in effect at the time the waiver was executed. *Id.*; *Dyess v. Am. Nat. Prop. & Cas. Co.*, 03-1971

(La. App. 1 Cir. 6/25/04), 886 So.2d 448, 451, *writ denied*, 2004-1858 (La. 10/29/04), 885 So.2d 592. In 1997, La. R.S. 22:1295 was amended to include the provision that "A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic only coverage."[3]

Here, the insurance application Ms. Jackson completed includes a selection paragraph which allows the applicant to select coverage for Bodily Injury, Property Damage, Medical Payments, Uninsured Motorist Economic Only, Uninsured Motorist Property Damage, Collision Deductible, Other Than Collision Deductible, Transportation Expense Coverage, and Towing & Labor. Following these selection provisions is a paragraph stating that, by Louisiana law, the policy will be issued with UMBI coverage with the same limits as liability coverage. The paragraph then explains that the applicant may select "lower limits of UMBI Coverage" or "Economic Only UMBI," or may reject UMBI coverage. Finally, there is a chart that instructs "Please indicate below the uninsured motorist coverage you wish on your policy," accompanied by a chart that reflects the various types of UMBI coverage and amounts that may be selected. The application does not explain the difference between UMBI coverage and Economic Only UMBI coverage.

In filing out the application form, Ms. Jackson selected policy limits of $100,000/300,000, property damage of $50,000, Economic-Only UMBI, and Collision and Damage Other Than Collision with deductibles of $500 each. Ms. Jackson declined coverage for Medical Payments, Transportation Expense Coverage, and Towing & Labor. At the bottom of the application form, following

---

[3] The provision setting forth the rebuttable presumption was added to La. R.S. 22:1408 Acts 1997, No. 1476, §3. La. R.S. 22:1295 was redesignated from R.S. 22:1406(D) by Acts 2003, No. 456, §3.

the paragraph relative to uninsured motorist coverage, she selected limits the same as the policy limits.

The policy Ms. Jackson signed was auto-generated using the information entered on the policy application. Relative to UMBI coverage, the policy defines "Uninsured/Underinsured Motorist Bodily Injury Coverage" or UMBI, and the difference between Economic and Non-Economic Losses. The policy then reiterates that by law, UMBI coverage is provided unless the applicant requests otherwise. The selection Ms. Jackson made in the application was pre-marked, with the information taken from her application, and it indicated where she should sign at the yellow arrows. Ms. Jackson signed the Economic-Only UMBI selection, by electronic signature. Ms. Jackson did not have the option of changing coverage at this stage.

In her deposition, Ms. Jackson testified that she did not remember if she talked to anyone, but if she did she would have told them that she wanted full coverage. She indicated that she did not remember making her selection of UMBI coverage, and that she would have selected the option that would give her full coverage. She did not remember signing the particular policy, and said that she would not have spelled her name wrong. Nevertheless, she did remember signing the policy electronically. Ms. Jackson further stated that she received an insurance card, but not a copy of the policy. She did not review the policy on line, and she did not review the coverage under the policy, "because I was under the impression I had full coverage. I was paying so much money. I was under the impression I was paying for full coverage." She also admitted that she did not reach out to anyone at Liberty after she received the policy because she believed she had full coverage.

In the absence of fraud, duress, or misconduct by the insurance agent, an insured is presumed to know and understand what she is signing. *Ponce v. Welch*,

15-669 (La. App. 5 Cir. 3/16/16) 191 So.3d 73, 78, *writ denied*, 16-00720 (La. 6/3/16), 192 So.3d 751; *Detillier v. Borne*, 15-129 (La. App. 5 Cir. 9/23/15) 176 S0.3d 669, 672, *writ denied*, 15-1901 (La. 12/7/15). The Louisiana Supreme Court has held that "it is the client's responsibility or duty, not the agent (sic), to determine the amount of coverage needed and advise the agent of those needs, and upon receiving the policy of insurance, the client has a duty to review the policy to make certain his needs are met." *Bourgeois v. Allstate Ins. Co.*, 15-451 (La. App. 5 Cir. 12/23/15), 182 So.3d 1177, 1182, *citing Isidore Newman Sch. v. J. Everett Eaves, Inc.*, 09–2161 (La.7/6/10), 42 So.3d 352, 358.

While we are constrained to follow Louisiana statutory and jurisprudential law, we consider it problematic. Louisiana's original UM form was issued in 1998 and remained unchanged for ten years. The 2008 revision came in response to the numerous judicial decisions involving the original. Despite revision, courts in Louisiana continue to grapple with variations of the issue of waiver, but conclusions differ across the circuits.[4]

The principle change in the 2008 revision involved removing the option for the consumer to select full UMBI coverage with the same limits as their liability coverage. The law says that such a selection is presumed, and therefore the consumer needs only make an affirmative selection if they wish to have a lower limit. In theory, this change makes the form more accurately reflect the language of the statute. However, Louisiana consumers now see a form that contains only options for how they may reduce or reject the coverage they have by default.[5]

---

[4] *See Estate of Oubre v. Riggs*, 19-180 (La. App. 5 Cir. 2019), 274 So.3d 897, 901, (pointing out that the first, second, and forth circuits have all taken issue with the use of "N/A" on UM forms, even when it reflects the prior choices of the applicant).

[5] It is true that the current form does explain this process, but the difference between "Full Coverage" and "Economic Only Coverage" is explained only after the selection is made, and on the policy form which cannot be changed. Thus, consumers may only see that explanation after completing a full insurance application and receiving a quote that may preclude more desirable options. Therefore, a lay person's non-binding choices on an earlier insurance application form, such as the form used by Liberty, can automatically eliminate options for selection on the final UM form, obscuring the fact that options existed in the first place.

20-CA-13                                    10

This problem may become even more acute with the proliferation of electronic form submissions. In the growing trend of on-line commerce, where patrons make choices based on what an insurer has stated in its on-line presence, insurers should clearly define the choice given to potential customers, so that they can make an informed and knowing selection. Without an insurance agent present to answer questions, consumers must work even harder to ensure they are making an informed decision. Using a form that states all options, including UMBI coverage as a matter of law in the application submitted, could make the on-line platform more efficient and would result in a patron's procurement of what was actually desired.

For example, Florida's UM statute maintains the same core features as Louisiana's statute. Fla. Stat. Ann. §627.727(1). The law presumes equal coverage limits unless the consumer chooses otherwise. *Id*. Signed waivers still create a conclusive presumption of knowledge. *Id*. However, the Florida statute builds in additional consumer safeguards that counteract the problems currently impacting Louisiana.

Florida's statute requires that any waiver/selection of lower limits, be made on a form featuring the following language: "You are electing not to purchase certain valuable coverage which protects you and your family or you are purchasing uninsured motorist limits less than your bodily injury liability limits when you sign this form. Please read carefully." *Id*. By law, that passage must appear on the UM form in bold 12-point font. *Id*. Importantly, failure to adhere strictly to that statutory requirement can void the knowledgeable waiver presumption. *See GEICO Indem. Co. v. Perez*, 260 So.3d 342, 352 (Fla. Dist. Ct. App. 2018). The substance of Florida's statutory warning could be applied to Louisiana law, since implementing a similar requirement in Louisiana may serve to better convey the gravity of a waiver to the consumer.

Additionally, insurance providers in Florida cannot sit back and allow a policy and waiver to renew indefinitely. Fla. Stat. Ann. §627.727(1). Instead, those providers must give annual notice to the insured, advising them of their UM options. *Id.* This notice must also include the means for an insured to request a change in that coverage. *Id.* Adding a requirement that insurance providers give an annual reminder to their insured, directly serves UM public policy goals. It may also reduce the likelihood of litigation over ill-advised waivers, while not necessitating the repeal of the presumptive knowledge provision.

Because the object of UM coverage is to provide full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance, the UM law operates to expand the pool of recovery options for auto accident victims. Removing the equal coverage option from the form is at best counter-intuitive and at worst deceptive. Public policy would be better served if the full UM coverage option was returned to the form.

Nevertheless, we are constrained to follow the law as it currently exists in Louisiana, pursuant to which the Liberty insurance policy suffices. In our *de novo* review, we find that Liberty's online insurance purchase forms were sufficient under Louisiana law to create the presumption that Ms. Jackson was adequately informed of the available choices of UMBI coverage, and that she knowingly selected Economic Loss only UMBI coverage in purchasing her automobile liability insurance from Liberty. Both the application and the actual policy, signed by Ms. Jackson, informed her that the policy automatically provided for UMBI coverage. Furthermore, the policy explained the difference between Economic and Non-Economic damages. Thus, she was on notice that by selecting Economic-Only UMBI, she was waiving Non-Economic coverage, and she admitted signing for Economic-Only coverage. Considering the language of the policy application

and the policy itself, we find that Plaintiffs did not present sufficient evidence to overcome the presumption that Ms. Jackson validly waived UM coverage, or to show that there was a genuine issue of fact regarding her selection of Economic-Only UMBI coverage, under current Louisiana law.

In their second assignment of error, Plaintiffs argue that "The Liberty Personal Insurance Company online process did not permit Renee Jackson to initial her selection choice in violation of Supreme Court jurisprudence and the Commissioner of Insurance directive. Accordingly, the trial court erred in holding that an icon with Renee Jackson's name and date was an acceptable substitute for the required initials."

The Louisiana Supreme Court, in *Duncan*, *supra*, set forth six requirements for a valid UM rejection form. Those requirements are: 1) initialing the selection or rejection of coverage chosen; 2) if limits lower than the policy limits are chosen, then filling in the amount of coverage selected for each person and each accident; 3) printing the name of the named insured or legal representative; 4) signing the name of the named insured or legal representative; 5) filling in the policy number; and 6) filling in the date. 950 So.2d at 552.

In this appeal, Ms. Jackson argues that her waiver of full UMBI coverage is invalid as the use of a signature instead of initials is contrary to the directive set forth in Insurance Bulletin No. 08-02 of the Louisiana Department of Insurance.

The fact that Ms. Jackson obtained the insurance policy on-line and signed the policy forms electronically does not invalidate her selection for UM coverage. The Uniform Electronic Signature Law, La. R.S. 9:2602, *et seq.*, applies to automobile insurance policies and required UM forms. *Bonck v. White*, 12-1522 (La .App. 4 Cir. 4/24/13), 115 So.3d 651, 655.[6] *See also Maradiaga v. Doe*, 15-

---

[6] La. R.S. 9:2607 provides that:

0450 (La. App. 4 Cir. 11/25/15), 179 So.3d 954, 959, *writ denied*, 15-2361 (La. 2/26/16), 187 So.3d 470. Furthermore, the fact that Ms. Jackson approved the selection of Economic-Only UMBI coverage by e-signature instead of e-initials does not invalidate her consent. *Compare Reno v. Travelers Home & Marine Ins. Co.*, 02-2637 (La. App. 1 Cir. 11/7/03), 867 So.2d 751, 754,[7] wherein the court said that "It is merely a question of identity and a representation of a person's willingness to be bound."

In *Ponce v. Welch*, *supra*, Ms. Ponce argued that the UM selection form indicating that she rejected UM coverage is invalid, because her name was typed on the form by someone else and she did not print her name on the form. She argued that her typed name was in violation of Bulletin No. 08–02, claiming that it required that she print her own name on the UM selection form. The court found that her waiver of UMBI coverage was valid, stating "we do not believe the law requires that an insured print her own name on a UM selection form in order for it to be valid." *Ponce*, 191 So.3d at 76-77. [8]

---

A. A record or signature may not be denied legal effect or enforceability solely because it is in electronic form.

B. A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation.

C. If a law requires a record to be in writing, an electronic record satisfies the law.

D. If a law requires a signature, an electronic signature satisfies the law.

[7] In *Reno*, *supra*, decided prior to the enactment of the electronic signature statutes, the court opined "A signature consists of both the act of writing one's name and of the intention of authenticating the instrument. The fact that a signature is printed by hand rather than written in cursive does not indicate a lack of genuineness. It makes no difference whether a signature is printed by hand or handwritten in script or cursive. It is merely a question of identity and a representation of a person's willingness to be bound." At page 754.

[8] See *Dixon v. Direct Gen. Ins. Co.*, 08-907 (La. App. 1 Cir. 3/27/09), 12 So.3d 357, 361. The First Circuit found that because the six tasks outlined in Duncan were met, the UM form was valid and enforceable, even though it did not comply with the bulletin.

See also *Lynch v. Kennard*, 09-282 (La.5/15/09), 12 So.3d 944; *Cortes–Valencia v. Crews*, 14–234 (La. App. 5 Cir. 10/29/14), 164 So.3d 204, 206; and *Garay–Lara v. Cornerstone Nat'l Ins. Co.*, 13–16,(La. App. 1 Cir. 5/2/14), 145 So.3d 423, 426. In each of these cases, the court held that plaintiff waived UMBI coverage, despite technical non-compliance with the Louisiana Department of Insurance requirements.

We find that the use of an electronic signature, instead of electronic initials, in the selection or rejection of UMBI coverage does not invalidate the option chosen by the insured.

Plaintiffs also allege that "The trial court erred in dismissing plaintiffs' claims for future medical expenses, lost wages, and loss of earning capacity." However, on remand, the trial judge clearly stated that he found that full UMBI coverage had been waived, and he gave reasons for his certification of the judgment as a "partial final judgment for purposes of immediate appeal." When a judgment is silent as to a claim or demand that was litigated, it is presumed to be deemed denied by the trial court. There is evidence in the record to show that this issue was presented to the trial judge. *Cambre v. St. John the Baptist Parish*, 12-590 (La. App. 5 Cir. 05/16/13), 119 So.3d 73, 81, *writ denied*, 13-1415 (La. 10/11/13), 123 So.3d 1227. The court's judgment, rendered on remand for reformation, was silent on the issue of further economic losses only, and therefore we conclude that the trial court did not rule on that issue. Thus, the trial court did not dismiss plaintiffs' future claims for economic benefits.

For the above discussed reasons, in our *de novo* review of the record we see no error in the trial court's ruling granting Liberty Personal Insurance Company's Motion for Summary Judgment, finding that UM coverage under the Liberty Personal Insurance Company Policy is limited to economic-only UMBI coverage based upon an enforceable UMBI coverage selection form. The trial court's judgment granting summary judgment is affirmed, and the matter is remanded for further proceedings. Costs of this appeal are assessed against appellants.

**AFFIRMED AND REMANDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **JULY 2, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 20-CA-13

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HON. LEE V. FAULKNER, JR. (DISTRICT JUDGE)
WILLIAM R. MUSTIAN, III (APPELLANT)        STEPHEN L. MILES (APPELLEE)        H. MINOR PIPES, III (APPELLEE)

**MAILED**
NO ATTORNEYS WERE MAILED